THE WILKIN MANUFACTURING COMPANY v. THE H. M.
LOUD & SONS LUMBER COMPANY.

*Contract by correspondence—Meeting of minds of parties—Breach
of warranty—Recoupment.*

1. Where the minds of the parties to a proposed contract for the
sale of machinery negotiated by correspondence never meet as
to the time and terms of payment of the purchase price, no
valid contract for such sale is made; citing *Johnson v.
Stephenson*, 26 Mich. 63; *Wardell v. Williams*, 62 Id. 50;
*Whiteford v. Hitchcock*, 74 Id. 208; *Bowen v. McCarthy*, 85
Id. 26.

2. Where in such a case the vendor sues for the balance due on the
machinery, which has been delivered to the vendee, and the
vendee is permitted to recoup damages on account of the fail-
ure of the vendor to perform the claimed contract, and to
make good the warranties therein contained, the vendee is not
in a position to assign error upon the charge of the court upon
the latter branch of the case.

Error to Iosco. (Simpson, J.) Argued November 16,
1892. Decided December 22, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The
facts are stated in the opinion.

*Main J. Connine,* for appellant.

*Pierce & Philbrick* (*O. E. M'Cutcheon,* of counsel), for
plaintiff.

LONG, J. Plaintiff brought suit for the claimed balance
due it from the defendant for certain mill machinery,
amounting to $1,944.38. On the trial plaintiff had ver-
dict and judgment for an amount considerably less than
the amount claimed. Defendant brings error.

Plaintiff, to make its case, on the trial produced the

items of machinery furnished, and proved their value, as an admission of the defendant as to the indebtedness.

The defendant, with its plea of the general issue, gave notice that the machinery was purchased under a special contract, by the terms of which the plaintiff was to manufacture and deliver to defendant two band saw-mills complete, with all appliances, etc., connected therewith, the same to be the best made, and was to furnish a competent man to set them up, and further warranted them to be well built, according to the latest improvements, and that they would cut first-class lumber in a first-class manner to the amount of 100,000 feet each per day of 20 hours; that plaintiff failed and neglected to send an experienced man to set the mills up, and that they were so unskillfully put up that they cut poor lumber, and would not cut 100,000 feet each per day, and did not run properly, but broke, thereby causing great delay and expense; also that the plaintiff did not send the said mills and machinery within the time agreed upon and fixed for the delivery, to the damage of defendant, which it would recoup on the trial.

Defendant introduced in evidence what it claimed to be the contract of warranty. This contract, if any was made, consists of certain letters and telegrams passing between the parties, as follows:

"MILWAUKEE, WIS., Dec. 26, 1888.

"LOUD & SONS,
          "Oscoda, Mich.

"*Gentlemen:* We propose to furnish you with two of our right and left hand eclipse band mills, all complete, except foundation, bolts, and belts, equipped as follows: To be used with heavy iron-frame foundation, with iron brackets to carry the lower shaft, sawyer's lever and connections in front or behind. Number of saws, fifteen. Gauge, ten inches wide, and forty-nine and 6-10ths feet long. Pitch of teeth, one and $\frac{1}{4}$. Kind of guides to be used, roller guides. Shipping weight, approximate. Price $3,000, f.

o. b. Milwaukee, Wis. We agree to furnish a competent, man to adjust and start this band mill, and we fully guarantee this machine as to material, workmanship,, and general performance.

"Very respectfully,

"THE WILKIN MFG. CO.

"By THEODORE V. WILKIN, V. P.""

"WILKIN MFG. COMPANY,

"Milwaukee, Wis.

"*Gentlemen:* We accept your proposition in full, and you will please enter our order for the band mill, etc., as specified in the above proposition, and ship said machinery addressed to us, addressed at Oscoda, State of Michigan, via the best route, on or before February 15, 1889, for which we agree to pay you as follows: $1,500 on receipt, of bill of lading, and $1,500 in four months —— days after receipt of machinery, provided said machinery comes up to your representations. We further agree to insure said machinery to the amount of unpaid account, loss, if any, payable to the Wilkin Mfg. Company, as their interest may appear, and policy delivered to them within ten days after receipt of said machinery.

"We further guarantee the above mills to be the heaviest mills made, and they will cut as much lumber, or more, and do it as perfectly, as any mill now on the market.

"We accept the above proposition in full.

"[Signed] ————."

On the margin is written, "Changed to conform to our letter."

"OSCODA, MICH., Dec. 28, '88.

"The WILKIN MFG. COMPANY,

"Milwaukee, Wis.

"*Gentlemen:* We accept the terms quoted us by J. W. Brown of 5¼ cents per pound, finished weight, for all the mill machinery shown on blue print No. 1, a list of which we herewith inclose, the shipment to be made not later than February 15, 1889, all to be first-class stock and finish. We also accept your offer to furnish us two band mills, one right and one left hand, as per your proposition of December 26, including guaranty, but with roller guides. We will make payments as follows: One-half the entire in four months, and one-half in six months, from the time

of shipment, giving notes therefor, with interest at six per cent. after three months from shipment.

"Yours, etc.,

"THE H. M. LOUD & SONS LUMBER CO.

"By H. M. LOUD, Pres."

"MILWAUKEE, WIS., Jan. 4, 1889.

"Messrs. H. M. LOUD & SONS,

"Oscoda, Mich.

"*Gentlemen:* As telegraphed, we write about the terms in the contract. It is not usual at the price per pound work to make terms other than cash, and at 5¼ cents per pound we simply make nothing on the work; besides, the price of $3,000 on those band mills is about $200 lower than we ought to have received. Therefore half the entire amount in four months, and one-half in six months, from the date of shipment, in notes bearing interest at the rate of six per cent. after three months, is too much to ask, and we hope you will grant the arrangement for payments as follows: One-half at date of shipment, in four-months note, interest bearing at six per cent., first for the machinery and second for the band mills; that is, we can negotiate settlement for the last half the machinery exclusive of band mills,—separate the last half the band mills. The only material difference, we ask interest from date of shipment, which really we are entitled to, aside from the considerations of prices as referred to, and to get the paper for us as soon after shipment as possible, which will accommodate us without cost to you. Our bank refuses six-months paper except at eight per cent. On four months and under we pay seven per cent. Kindly write us if the foregoing will be satisfactory.

"Respectfully,

"THE WILKIN MFG. CO.

"Per JOHN W. MORRIS."

It appears from this correspondence that the plaintiff wrote the proposition of December 26, 1888, and mailed it to defendant, inclosing with it the acceptance in blank for the defendant to sign and return. Instead of signing this acceptance, the defendant wrote upon the margin of it, "Changed to conform to our letter." Defendant then wrote a letter, not of acceptance in full of the plaintiff's

proposition, but one changing the times and terms of payment. In answer to this, the plaintiff wired that it had entered the order, but adding, "See letter." This is followed by a letter on the next day, suggesting different times and terms of payment then proposed by defendant. This last letter was never answered by the defendant, so far as disclosed by the record, and the time of payment never agreed upon.

The mills and machinery were shipped, but not until some time in March, and the mill was not put up in running order until some time in the summer. Defendant had considerable trouble with it, and it was not until July that it worked satisfactorily. In July the defendant wrote the plaintiff as follows:

"OSCODA, MICH., July 24, 1889.

"WILKIN MFG. CO.,
     "Milwaukee, Wis.

"*Gentlemen:* Mr. J. S. Curry asked for our acceptance of the band mills, which we are quite willing to grant, as the mills are now working very satisfactorily. This does not waive the question of damage by loss of time, expenses, etc., on account of the mills not having been furnished in time, or adjusted and properly started in the early running of the mill.

     "Yours truly,
     "THE H. M. LOUD & SONS LUMBER CO.
     "BY H. M. LOUD, Pres."

The court charged substantially that this last letter constituted an acceptance, and a waiver of all claims for damages except such as were expressly reserved in the notice. The court also charged:

"If this defendant was injured because the plaintiff did not fulfill its agreement there in the delivery of the property agreed to be delivered in time, and by reason of the failure of the mill to correspond to their guaranty,—and this is one of them, 'That the machine as to material and workmanship and general performance,' and they guarantee

it as to that, and that both mills will be the heaviest and strongest mills made, and that they will cut as much lumber or more, and do it as perfectly, as any other mill in the market,—I say, if they have failed in the contract, the defendant, for any other injury or damage it has suffered, would have a right to keep it back in this action. And you see what the rule means. That means this: That if they had a mill which was not up to the standard of what had been represented and that it was agreed to give them, by allowing them to keep these damages, that would simply be paying them that much less for it, and that would not be paying for a mill that was as good as the other. * * * So, in this case, if you should find that the plaintiff did not fulfill their contract, and if you should find that the defendant proved that, and that thereby they had suffered damage, that by the nonfulfillment of this contract on the part of the plaintiff the defendant had been injured, and that it had been delayed and had lost time, and that by want of having a competent man there they had suffered injury, and by the improper manufacture of their lumber, or by breakage of their property, and that it was caused by the plaintiff's failure to do this and fulfill its contract, they would have the right to have it offset in this action to the amount you may find it to be."

Many of the errors assigned relate to the charge of the court. If either party has a right to complain of the charge, most certainly it is not the defendant. It was permitted to go to the jury upon the question of the nonfulfillment of the contract of warranty claimed to be contained in the original contract between the parties, to show what damages it had sustained, not only by the failure to ship in time, but by the failure of the mill to comply with the terms of the claimed contract under which the mills and machinery were purchased.

The court, we think, was in error in holding that any contract was made between the parties, or that the minds of the parties ever met; but this error is not prejudicial to the rights of the defendant. Bishop on Contracts (sections 322, 323) lays down the rule:

"If one makes to another an offer, verbal or written, direct, by letter or by telegram, of a sort implying nothing to be done except to assent or decline, and the latter accepts it, adding no qualification, there is thus constituted a mutual consent to the same thing at the same time; in other words, a contract. And the question of the sufficiency of the transaction to work this result is of law for the court. On the other hand, though there is an acceptance, if it is not to the exact thing offered, or if it is accompanied by any conditions or reservations, however slight, in time or otherwise, no contract is made. It is so, for example, where new terms are introduced; they constitute an offer on the other side, and leave the question open."

In a note to *Eskridge v. Glover*, 26 Amer. Dec. 349, it is said:

"If the acceptance do attach any new condition or fall short of the terms proposed, it is not only insufficient as an acceptance, but is also a rejection of the proposal, and a termination of the liability of the proposer to be bound by a subsequent acceptance conforming to the terms of his proposal."

These rules have been frequently applied in this Court. *Johnson v. Stephenson*, 26 Mich. 63; *Wardell v. Williams*, 62 Id. 50; *Whiteford v. Hitchcock*, 74 Id. 208; *Bowen v. McCarthy*, 85 Id. 26.

It is evident from the correspondence that the minds of the parties never met, in the present case, upon the terms of the offer proposed by the plaintiff, or the counter proposition of the defendant. The mills and machinery were, however, accepted and put in place by the defendant, the plaintiff furnishing a man, under whose supervision it was done; and on the trial the defendant was allowed to and did recoup quite an amount of damages for failure to perform the claimed contract, and to make good the warranties contained therein. The plaintiff, however, has not appealed. We see no reason why the defendant should

claim error in this record. It has got more than it was entitled to at the hands of the trial court.

The judgment must be affirmed, with costs.

The other Justices concurred.