(June 4, 1908.)

## M. L. PHELPS, Respondent, v. J. R. GOOD et al., Appellants.

[96 Pac. 216.]

OPTION TO PURCHASE TOWN LOT—NEGOTIATIONS—MISUNDERSTANDING—CONTRACT.

1. In order to constitute a contract, there must be a common understanding between both parties. Their minds must meet as to all its terms, and if any portion of the proposed terms is unsettled and unprovided for, there is no contract.

2. An acceptance of an offer to be effectual must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer.

3. *Held*, that the evidence is not sufficient to show that a contract was entered into.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County.  Hon. Fremont Wood, Judge.

Action to recover damages for failure to comply with an alleged contract for the sale of a town lot.  Judgment for the plaintiff.  *Reversed.*

Perky & Blaine, and John F. MacLane, for Appellants.

In order to constitute a contract, there must be a distinct understanding common to both parties; the minds of the parties must meet as to all its terms, and if any portion of the proposed terms is unsettled and unprovided for, there is no contract.  (9 .Cyc. 245.)  The offerer may annex to his offer any conditions which he sees fit, and the offeree must comply therewith.  (9 Cyc. 252.)  One of the conditions frequently imposed is as to the time of acceptance.  (9 Cyc. 265; *Maclay v. Harvey,* 90 Ill. 525, 32 Am. Rep. 35.)  An acceptance of an offer to be effectual must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer.  (1 Page on Contracts, 74-78, secs. 45, 46; 9 Cyc. 267.)  An acceptance which varies from the terms of the offer is a rejection of the offer and a counter-proposition which must in turn be accepted by the offerer in order to constitute a binding contract.  (1 Page on Contracts, 75, sec. 46; 9 Cyc. 290.)  After an offer has been rejected by a counter-proposal, it cannot be later accepted without a renewed consent of the offerer.  (9 Cyc. 290, and cases cited; *Egger v. Nesbit,* 122 Mo. 667, 43 Am. St. Rep. 596, 27 S. W. 385.)  After rejection by counter-proposition, the offeree cannot fall back on and accept the original proposition.  (1 Parsons on Contracts, 7th ed., star p. 477; *Egger v. Nesbit, supra; Wilkins Mfg. Co. v. Loud,* 94 Mich. 158, 53 N. W. 1045.)

An acceptance which is not the exact thing offered, or which is accompanied by any condition or reservation, however slight, constitutes no contract.  (Bishop on Contracts, secs. 321-323; see, also, *Carr v. Duvall,* 14 Pet. 77, 10 L. ed. 361.)

Hawley, Puckett & Hawley, and B. P. Bradford, for Respondents.

Taking together the correspondence referring to this deal, there was a binding offer and acceptance. (23 Cent. Dig., "Frauds, Statute of," par. 262; *Townsend v. Kennedy,* 6 S. D. 47, 60 N. W. 164; *Hunt v. Capital State Bank,* 12 Ida. 588, 87 Pac. 1129.) "When several writings constitute one contract, such writings must be construed together." (*Beckwith v. Talbot,* 95 U. S. 289, 24 L. ed. 496; *Ryan v. United States,* 136 U. S. 68, 10 Sup. Ct. 913, 34 L. ed. 447.) Respondent has a right to insist that the court place itself in the situation of the parties themselves. (*Burke v. Wells, Fargo & Co.,* 7 Ida. 42, 60 Pac. 87; *Higginson v. Manson,* 126 Cal. 467, 77 Am. St. Rep. 192, 58 Pac. 907.) In considering the matter of offer and acceptance, the offers and statements made in one letter are held out until closed. (*Warner v. Marshall,* 166 Ind. 88, 75 N. E. 582.) A mere request for performance in a different manner than that which has been accepted will not have any effect upon the contract as accepted. (9 Cyc., p. 269; *Turner v. McCormick,* 56 W. Va. 161, 107 Am. St. Rep. 904, 49 S. E. 28, 67 L. R. A. 853; *Ennis, Brown & Co. v. Hurst,* 1 Cal. App. 752, 82 Pac. 1056; *Kreutzer v. Lynch,* 122 Wis. 474, 100 N. W. 887; *Cherokee Mills v. Gate City Cotton Mills,* 122 Ga. 268, 50 S. E. 82; *Brown v. Cairns,* 63 Kan. 693, 66 Pac. 1033.)

An offer made by letter is accepted when the answering letter is postpaid, addressed and delivered in the postoffice. (Anson on Contracts, pp. 27-32; 48 Cent. Dig., title "Vendor and Purchaser," secs. 18, 19-22; *Tayloe v. Merchants' Fire Ins. Co.,* 9 How. 390, 13 L. ed. 187; 1 Warvelle on Vendors, 134; *Otis v. Payne,* 86 Tenn. 663, 8 S. W. 849; 9 Cyc. 286, 295; *Campbell v. Beard,* 57 W. Va. 501, 50 S. E. 747; *Reeves v. Breuning,* 13 N. D. 157, 100 N. W. 241; *Price v. Atkinson,* 117 Mo. App. 52, 94 S. W. 816; *Patrick v. Bowman,* 149 U. S. 411, 13 Sup. Ct. 811, 866, 37 L. ed. 790; 10 Ballard's Real Prop., sec. 810; *Brauer v. Shaw,* 168 Mass. 198, 60 Am. St. Rep. 387, 46 N. E. 617.)

SULLIVAN, J.—This action was commenced to recover damages for a breach of an alleged contract for the sale of a certain town lot, situated in Boise City. It is alleged in the amended complaint, which will hereafter be referred to as the complaint, that on or about the 20th day of February, 1906, plaintiff and respondents mutually agreed, in writing, that the appellants would sell to the plaintiff and that the plaintiff should purchase from the defendants, lot 5 in block 115 of the original townsite of Boise City, for the sum of $2,000; and that at the same time and place, the respondent paid to the appellants the sum of $500 as part payment of the purchase price, and further agreed to pay the remainder of the purchase price on or before March 10, 1906. Continuing, the complaint contains the usual allegations in actions of this character as to the offer of performance and tender on the plaintiff's part, and the refusal to perform by the defendants, and demands judgment for damages in the sum of $4,000.

The answer of the defendants denies the alleged partnership, the agreement of sale, the tender by the plaintiff, the damages laid in the complaint, and avers that the defendants, who were the owners of the lot described in the complaint, gave the plaintiff a verbal option to purchase the same, which option was without consideration and was to extend only to March 1, 1906, but was later extended, without consideration, to March 10, 1906; that plaintiff attempted to modify the terms of the option by sending to the Bank of Commerce at Boise a check for $1,352.50, to be paid to defendants on delivery of a warranty deed with abstract of title, thereby endeavoring to procure the land for $1,852.50 instead of $2,000, and that thereupon the defendants withdrew the option, notified the respondent of the withdrawal and returned to the respondent the $500 paid by him, directing the bank to return the $1,352.50. And for a separate defense, the answer sets up the statute of frauds.

The defendant Schooler filed a disclaimer and the cause was tried between the plaintiff, Phelps, who is respondent here,

and the defendants, Good & Roberts, who are appellants here. Upon the issues thus made, the cause was tried by the court without a jury, and judgment was entered in favor of the plaintiff and respondent for the sum of $1,250 against the defendants, Good & Roberts. The appeal is from the judgment and order denying a new trial.

There is but very little contradiction in the material facts of the case as they appear in the record. It appears that on or about February 12, 1906, the respondent, who lived in Nebraska, was visiting Boise, and while there, entered into verbal negotiations with the appellants in regard to the purchase of said town lot. There evidently was a misunderstanding in regard to the proposition made by the appellants to the respondent for the purchase and sale of said lot. The record clearly shows that both parties understood the purchase price to be $2,000. No consideration was paid at the time of the negotiations, and it appears that the terms of payment were not clearly fixed. The respondent then returned to Nebraska, and on arriving there wrote to the appellants enclosing them a check for $500, and in his letter in which the check was enclosed, he stated that said check was " the first payment on my option on lot 5, block 115, original plat of Boise, Idaho." The letter also requested that appellants hold the cash option open until March 10th. On February 20th, the appellant, Good, wrote to the respondent, acknowledging the receipt of the check, and saying that the option might stand open until March 10th. This letter also mentioned a sewer tax which the appellants said they were selling said lot subject to. On February 23d, respondent answered said letter, disputing that the sale was subject to said sewer tax, and asserting that he was entitled to a five per cent discount for cash and a division of commission, all of the parties hereto being real estate agents, and it appears that the custom among such agents is that when one sells the other property, they divide commission with him. It appears that no answer was made to this communication because of some delay in the mails, until March 1st, and in the meantime, on February 28th, the respondent wrote two letters, one to the appellants which stated

that he was sending the Bank of Commerce a check for $1,-352.50 and giving a memorandum of the agreement as he understood it, which included items of cash discount and one-half of the commission; and the other letter was written to the Bank of Commerce enclosing a check for $1,352.50, instructing the bank to deliver the same to appellants on their delivering to it for the respondent, a warranty deed conveying sewer rights, water, ditches, and a clear title generally.   The first mentioned letter is as follows:

"Shelton, Nebraska, Feb. 28th, 1906.
"Good, Roberts & Schooler, Boise, Idaho.
"Gentlemen:—I send to the Bank of Commerce a ck for $1352.50 to be paid to you, on your delivering to them, for me a warranty deed and abstract of Lot No. 5, Bk No. 115 original Plat of Boise, as per our agreement as I understand it, as follows:

| | | |
|---|---|---|
| Price of lot..................$2000.00 | | |
| 5 per cent discount for cash...............$ 100.00 | | |
| One-half your com. on sale,................ | | |
|    net $1900.00—2½ per ct............... | 47.50 | |
| Cash advanced......................... | 500.00 | |
| Check at the Bank of Commerce to balc..... | 1352.50 | |

$2000.00

"Now, gentlemen, I believe this will coincide with your knowledge of the matter, if not please let me know wherein it does not, and Oblige; do you hold yet Lots No. 7 & 8 Bk No. 17 Fairview Addition.   I now expect to come out there again about the 15th, of March.   Let me hear from you and Oblige;

"Yours Truly,
"M. L. PHELPS."

The second letter is as follows:

"Shelton, Nebraska, Feb. 28th, 1906.
"J. E. Clinton, Cashier, Bank of Commerce, Boise, Idaho.
"Dear Sir:—I send herewith a check payable to the order of Good, Roberts & Schooler on they delivering to you for

me a warranty deed of lot no. 5 bk no 115, original plat of Boise, Idaho; with abstract of same this deed must convey sewer rights, and water rights such as are usually deeded with Property of your city. as i cannot be there, and do not understand the usual method of conveying titles of your City I wish you would.attend to this for me and see that everything is as it should be to convey to me a clear title to the property. if the deed is all right turn the ck over to them and pay the same. & oblige

"Yours Truly;<br>"M. L. PHELPS."

"Please let me know what you do & send deed to me it O. K."

On March 1st, the appellant Good, having just received respondent's letter of the 23d, answered denying his obligation to pay the sewer tax and also denying any agreement for a cash discount or division of commission. He also wrote that they would furnish an abstract showing clear title on the payment of $1,500, or would return the $500, together with interest from the day it was received. On the 2d day of March, the appellant Roberts, having just received respondent's letter of the 28th, wrote a letter of the same tenor as Good's letter of the 1st of March, and requested an answer by return mail. On March 3d, appellant Roberts saw the respondent's letter to the bank and immediately wrote to respondent, sending him a draft for the $500 he had paid, and calling the deal off, and stated, "There is a misunderstanding all round." On March 5th, the respondent having received Good's letter of the 1st, wrote inclosing a check for $147.50 to make up the deficiency in his check to the bank, and instructed the appellants to deposit the deed with the bank, and to call at the bank for their money. This letter was dated March 4th, but it was in fact written on the 5th, on which day the check was dated. On the 5th of March, but after he had sent his former letter, as respondent testified, he wrote a letter in answer to Roberts' letter of the 3d of March, saying that he did not wish to call the deal off and returned the draft. On March 8th, Roberts wrote to respondent returning the check for $147.50, and stat-

ing that owing to the misunderstanding, they had withdrawn the lot from the market. On March 10th, Roberts wrote in answer to the respondent's letter of the 5th returning the check, saying he could not make the respondent accept the draft which he had returned to him of $147.50, but could keep the tender of the draft good, and that the money was his (Phelps) whenever called for, and on the 12th of March, the respondent wrote again, acknowledging the receipt of the check of $147.50, and said that he was sorry the misunderstanding had occurred and not to have gotten the lot. While there is some dispute by the respondent of the fact as to the method of returning the $500 to respondent, Mr. Cruse, the assistant cashier of the bank testified to the effect that the appellant, Roberts, deposited $500 for the respondent in the Bank of Commerce on April 9, 1906.

The above and foregoing are the material facts of the case. Numerous errors were assigned, and in our view of the matter a determination of the question as to whether a contract was entered into will dispose of the case.

It clearly appears from the above statement of facts and the letters above quoted, written by the parties hereto, that there was a misunderstanding in regard to the terms of the option given by the appellants to the respondent for the purchase of said lot. The fact appears that said lot was owned by the appellants, and for that reason they did not offer five per cent discount for cash nor one-half of their commission, nor a deduction for sewer tax. The above letter of February 28th was received and the letter of the same date to the cashier of the Bank of Commerce was inspected by one of the appellants, and immediately after examining said letter and on March 3, 1906, one of the appellants wrote to the respondent and inclosed him his draft for $500 and called the deal off. That was two days prior to the date of the letter from the respondent to one of the appellants inclosing them a check for $147.50, the amount in dispute between them. The deal was called off on the 3d of March, two days before the letter of the 5th was written. This would clearly indicate that the minds of the parties never met and that there was a

clear misunderstanding between the parties in regard to the price to be paid for said lot and the title to be conveyed.

Respondent testified that he was relying on the letters of February 16th and 20th as embodying the contract sued on; that they embodied the agreement made on the 12th day of February, 1906. The letter of the 16th was the one in which the check for $500 was inclosed as the first payment on said option, and the letter of the 20th was the letter in which one of the appellants acknowledged the receipt of the $500 check and stated that the option might stand open until March 10th. If those two letters stood alone and the respondent had tendered the payment of the balance of the purchase price, to wit, $1,500, prior to the 10th of March, there would be no question of the respondent's right to recover had he made the final payment within that time. But on the receipt of the letter of the 20th, the respondent wrote the letter dated February 23d, in which he claimed five per cent discount for cash and one-half of the commission. In his letter of February 28th, he advised the appellants that he had forwarded to the Bank of Commerce a check for $1,352.50, stating that that was the balance of the purchase price of the lot after deducting five per cent discount for cash and one-half of the commission. It would appear that the minds of the parties had not met upon the contract for the purchase of said lot, and that as soon as the bank presented said matter to one of the appellants, he immediately, on the third of March, returned the $500 to the respondent and declared the deal off. It was then too late for the respondent to tender the $147.50 and bind appellants thereby. The minds of the parties never met, hence no contract was entered into. In order to constitute a contract, there must be a distinct understanding common to both parties; the minds of the parties must meet as to all of its terms, and if any portion of the proposed terms is unsettled and unprovided for, there is no contract. (9 Cyc. 245.) An offer to enter into a contractual relation must be so complete that upon acceptance an agreement is formed which contains all of the terms necessary to determine whether the contract has been performed or not. (1 Page on Con-

tracts, sec. 27; 9 Cyc. 248.) An acceptance of an offer to be effectual must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer. (1 Page on Contracts, sec. 45; 9 Cyc. 267.) An acceptance which varies from the terms of the offer is a rejection of the offer and is a counter-proposition which must in turn be accepted by the offerer in order to constitute a binding contract. (9 Cyc. 290.) After an offer has been rejected by making a counter-proposal, it cannot be later accepted without a renewed consent of the offerer. (9 Cyc. 290.) The respondent's letters of the 23d, 24th and 28th of February, clearly indicate a rejection of the appellant's offer in his letter of the 20th of February. It was a counter-proposal which must have been accepted by the appellants to complete the contract, which they did not accept. The respondent then became the offerer and the appellants the offeree. (*Wilkins v. Loud*, 94 Mich. 158, 53 N. W. 1045; *Baker v. Holt*, 56 Wis. 100, 14 N. W. 8.)

It appears from the evidence that the minds of the parties never met at any time during all of these negotiations. From the first to the last, or until the option was withdrawn, there was a difference of opinion as to the price to be paid and the condition of the title to be conveyed. It is clear that the minds of the parties never met, hence no contract was entered into.

The conclusion reached, after an examination of all of the evidence, is that there was a misunderstanding between the parties and no contract was ever entered into between them for the sale and purchase of said lot. That being true, the judgment must be reversed and it is so ordered, and the cause remanded for further proceedings in accordance with the views expressed in this opinion. Costs of this appeal are awarded to the appellants.

Ailshie, C. J., and Stewart, J., concur.

ON PETITION FOR REHEARING.

(June 26, 1908.)

STEWART, J.—A petition for rehearing has been filed in this case. The petitioner contends first that the court was in error in reciting as a fact that a letter was written by Good to respondent on March 3d, when in truth appellant Roberts wrote such letter. This was a clerical error and does not in any way affect the importance of such letter or the conclusion of the court. The respondent sought to recover from Good & Roberts for a breach of an alleged contract. The letter was treated merely as an incident or as evidence in determining whether a contract was in fact made, and it matters not whether such letter was written by Good or Roberts. The effect was the same. The original opinion has been corrected accordingly.

It is next contended that the court failed to give weight to the letter of Good, dated March 1, 1906, and the respondent's answer thereto dated March 5, 1906, respondent claiming that the letter of Good was a proposition to sell and the respondent's answer was an acceptance of the same. The letter of Good of March 1st, among other things, recites that a misunderstanding between the parties had arisen in regard to the sewer tax, but that, if the respondent desired the lot, the writer (Good) was willing to sell. A reference was also made to the sewer tax and to the commission, to the effect that the appellants could not allow the respondent any commission on the sale as the lot belonged to the appellant. The writer further recited:

"I leave here to-day for Los Angeles, California. I am leaving the deed made out in the hands of Mr. Roberts, and he will furnish you abstracts showing perfect title upon the payment of $1,500; or, if you rather, I will return you $500 together with interest from the date I received it."

This letter was a restatement by Good of his offer to sell, as he understood it. The purchase price was to be $1,500 in addition to the $500, which had previously been paid as a

part of the purchase price. This letter advises Mr. Phelps that the deeds are in the hands of Mr. Roberts, who will furnish the abstract and turn the deeds over to him upon respondent paying to him $1,500 additional. The letter of Mr. Phelps, which counsel for respondent says is an acceptance of this offer, is as follows:

"March 5, 1906.

"J. R. Good, Boise, Idaho.

"Yours of the first is just received. I note what you say about the lot and the misunderstanding, and I see there was a chance to get two different properties mixed. On my part, I did not know at that time that you owned that lot yourself. Of course, it makes some difference to me, but I see I am in for it and enclose herewith my check for $147.50, and the other check is at the bank to balance the amount called for. You can deposit the deed with the bank and tell them to hold it, as I will be there in a few days."

It will be observed by this letter that the respondent incloses a check for $147.50, and notifies the appellants that the other check is at the bank, the balance of the amount called for. The letter of respondent dated February 28, 1906, to the bank inclosing the other check referred to in this letter of March 5, instructs the bank as follows:

"I send herewith a check payable to the order of Good, Roberts & Schooler on them delivering to you for me warranty deed of Lot 5 with abstract of same. This deed must convey sewer rights and water rights, such as are usually deeded with property in your city," etc. Taking these two letters together, it will be observed that the instructions contained in the letter to the bank of February 28th, as to the conditions upon which the check would be delivered, are not withdrawn, modified, or in any way changed; thus leaving the conditions under which the appellants could secure such check, as stated in the letter to the bank. The letter of March 5th is not an unconditional acceptance of the proposal made by Mr. Good in his letter of March 1st. Under Good's proposal, the deed was to be delivered at the office of Good & Roberts upon payment of $1,500 in cash. The letter of Mr. Phelps requires

a deed to be delivered at the bank, and that the same convey certain sewer rights, water rights, etc., thus making and fixing new conditions upon the part of Phelps which were not contained in the proposal of Mr. Good. The law, as we understand it, is that where a proposal to sell is made, in order to constitute a contract, the offeree must accept the proposition in the identical terms in which it is made. The letter of Phelps dated March 5th, fails to withdraw the conditions contained in the letter to the bank. These conditions were never withdrawn by either a letter to the bank or a letter to the appellant. In other words, the letter of Mr. Phelps of March 5th, was not an acceptance of the offer of Good of March 1st. The letters, therefore, constituted no contract.

The authorities cited by counsel for respondent state the law correctly, but they are not applicable to the facts of this case. Counsel is correct in contending that, where an offer to sell is made which may be revoked, yet, while it remained in force and unrevoked, it was a continuing offer during the time limited for acceptance, and during the whole of that time it was an offer every instant. But as soon as it was accepted it ceased to be an offer merely and then ripened into a contract. Also, where an offer is made by letter, it is accepted when the answering letter is postpaid, addressed and deposited in the postoffice. Applying this law to the facts of this case, had Mr. Phelps accepted the offer made by Good in his letter of March 1st, in the terms in which said offer was made, it would have constituted a contract and would have bound the parties thereto.

The mistake, however, under which counsel for respondent has labored in this case, is in contending that the letter of March 5th of the respondent was an acceptance of the offer of Good of March 1st, and thereby constituted a contract. It is only necessary to examine these letters to learn therefrom that there was no acceptance by Phelps of the offer made by Good, and that new conditions and requirements were imposed which were not embraced in or contemplated in the letter of Good. Phelps, therefore, not having accepted the proposition of Good, and there being no contract, it was im-

material whether the letter written by Roberts withdrawing the offer, or the letter of Phelps of March 5th, was written and posted first. Where an offer by letter is made which is not accepted in the answering letter thereto, but new conditions are imposed, there is no contract to sell, and the offerer may withdraw such proposition at any time before accepted by the offeree. In this case the respondent not having accepted the offer of the appellant, and the same having been withdrawn before acceptance, there was no contract and the respondent could not recover.

The original opinion deals with all questions raised by the respondent upon his petition for rehearing. The petition is denied.

Ailshie, C. J., and Sullivan, J., concur.