174 P.2d 202

BROTHERS et al. v. ARAVE et al.

No. 7328.

Supreme Court of Idaho.

Nov. 4, 1946.

A. A. Merrill, of Idaho Falls, for appellants.

Ralph L. Albaugh, Errol H. Hillman, and John L. Bloem, all of Idaho Falls, for respondents.

GIVENS, Justice.

Appellant Ben Brothers and Respondent Orland J. Arave, during November 1945, began negotiations for the sale by respondents to appellants of a lot, community property, and part of a larger tract of land which respondents were buying on the installment plan from the Idaho Falls Investment Company. The price concededly agreed upon was $3,000, which with $150 would liquidate respondents' indebtedness to the Idaho Falls Investment Company and enable them to give clear title to appellants.

Appellant Ben Brothers first suggested the purchase of "eighty feet frontage." Proposals and counter proposals thereafter varied up to 110 or 125.8 feet "frontage." One hundred ten feet measured east and west at right angles to the north and south lines, actually resulted in a diagonal distance along the adjoining road on the north of 125.8 feet. Such a lot encompassed within its western confines a stone building belonging to respondents. The uncertainty developed because the north line of the lot extends diagonally northwest and southeast; in other words, as appears from the plat and exhibit in the case attached hereto (depicting the amount of land claimed by appellants, title to which was quieted by the trial court in respondents), the south line of the lot is at right angles to the east and west lines, but the north line is diagonal.

## PLAT OF

A PART OF THE NW¼-NE¼ OF SEC. 24
TOWNSHIP 2 NORTH - RANGE 37 E.B.M.
IN THE CITY OF IDAHO FALLS
BONNEVILLE COUNTY· IDAHO.

BEN BROTHERS

174

The ultimate lack of agreement thus originated in the preliminary stages of the negotiations, and was found by the court to persist throughout the conferences and never to have been clarified.

Negotiations proceeded until November 26 or 27, when the parties met at one Bradbury's office in Idaho Falls, who was to act as scrivener and prepare the deed. In the interim, appellants entered into possession and excavated for a foundation and laid water pipes. At the meeting in Bradbury's office, appellant Ben Brothers gave a check payable to Fred Caldwell, to Bradbury. Fred Caldwell was the owner of the Idaho Falls Investment Company and this check was in turn delivered to Caldwell and with $150 paid by respondent Orland J. Arave, was applied upon respondents' purchase price of the larger tract, completing the transaction between respondents and the Idaho Falls Investment Company.

Appellants contend that prior to or at that time, a completed contract was consummated with full performance except delivery of the deed by respondents. Respondents assert there had been merely a series of inconclusive negotiations, offered to return the money paid by appellants, and interest thereon, and the cost of the improvements.

Appellants sued to quiet their title and respondents denied appellants' title and cross-complained to quiet their title. The controversy is thus in effect an action by appellants for specific performance. The court found:

"That on or about the 15th day of November, 1945, the plaintiff, Ben Brothers, commenced negotiations with the defendant, Orland J. Arave, for the purchase of all, or a part, of the property described in paragraph I hereof, the exact amount being in dispute; that at all times since the inception of said negotiations, the aforesaid parties have been in disagreement, and a bona fide dispute has existed between them with respect to the amount of the property to be conveyed, and that the minds of the said parties never have met in that particular,"

and quieted title in respondents, decreeing repayment to appellants of the $3,000 paid by them, with interest, reimbursement for their improvements; and that the same should be a lien on the premises.

Appellant's version of the concluding conversation at the meeting in Bradbury's office was:

"Q. And I think you (Brothers) testified on your re-direct that there was some discussion in Mr. Bradbury's office, at the time the check was delivered, with respect to the boundary dispute; did you so testify? * * * A. Yes, there was; we spoke about it; he (respondent) had said some little thing about it, and we was talking about looking at it that way, but he says, 'Well,' he says, 'let's forget it.' and he wrote out his check. And I says, 'Is that

all right?' And he says, 'That's all right.' And I took my check and turned it in, and I supposed it was all right. And he said, 'I will bring my wife down and sign the deed.'

"Q. He said, 'Forget it,' notwithstanding that he knew that the east line of his property would cut off about two and a half feet of his house? A. About two feet.

"Q. Notwithstanding that, he said 'We will forget it,' did he? A. He said, 'We'll forget it,' and he wrote out his check, and I presumed that he had forgot it.

"Q. Did you presume by that that you had bought the west (sic) two feet of his house, of the building there? A. I bought the ground; didn't buy the house, didn't figure on it."

Respondent Orland J. Arave thus testified:

"A. On our way up to the office (Bradbury's) I brought the matter up again, and I says, 'How about this boundary dispute?' and he shrugged his shoulders again, and he says, 'We'll fix that up all right.' When we got up into Mr. Bradbury's office he told Mr. Bradbury what he wanted, and after he got through I told him, I says, 'Mr. Bradbury, we are having a dispute over this, we haven't got this little thing settled, yet.' And he says, 'Is that so?' and I says, 'Yes.' He says, 'What's the trouble?' and I mentioned this dispute. And he was going to fix up a deed, and Mr. Brothers says, 'Oh, we'll fix that up all right.'

And then Mr. Bradbury asked me if it was all right to go ahead with the deal, and I told him, I said it was, and I would try to thresh it out, and I would let him know."

Appellants contend the court should have determined what the contract was; i. e. the amount of land that was actually being or to be transferred. However, the court cannot make a contract for the parties. People ex rel. Heartburg v. Interstate Engineering & Construction Co., 58 Idaho 457, 75 P.2d 997.

According to respondent Orland J. Arave's testimony, the exact amount of land to be transferred was to be 'threshed out' and he would let the scrivener know. No deed appears to have been prepared—at least none is in the record. The next day respondent Orland J. Arave notified Bradbury not to go ahead with the preparation of the papers and testified that on the evening of that day, appellant Ben Brothers offered to give him, respondent, a 99-year lease on the land in the western part of the amount claimed by appellants and which contained respondents' building. Respondents refused to accept such a proposition and the deal was off.

This court has announced and consistently adhered to the proposition that:

"In order to constitute a contract, there must be a distinct understanding common to both parties. The minds of the parties must meet as to all of its terms, and, if any

portion of the proposed terms is unsettled and unprovided for, there is no contract. (9 Cyc. 245.) An offer to enter into a contractual relation must be so complete that upon acceptance an agreement is formed which contains all of the terms necessary to determine whether the contract has been performed or not. (1 Page on Contracts, § 27; 9 Cyc. 248.) An acceptance of an offer, to be effectual, must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer. (1 Page on Contracts, § 45; 9 Cyc. 267.) An acceptance which varies from the terms of the offer is a rejection of the offer and is a counter proposition, which must in turn be accepted by the offerer in order to constitute a binding contract. (9 Cyc. 290.) After an offer has been rejected by making a counter proposal, it cannot be later accepted without a renewed consent of the offerer. (9 Cyc. 290.) " Phelps v. Good, 15 Idaho 76 at pages 84 and 85, 96 P. 216, 218.

Likewise quoting with approval Section 17, 25 R.C.L. 218, as follows:

"One of the fundamental rules respecting the specific performance of contracts is that performance will not be decreed where the contract is not certain in its terms. The terms must be complete and free from doubt or ambiguity, and must make the precise act which is to be done clearly ascertainable. A decree of specific performance may be entered where the contract is certain and complete, or contains provisions which are capable in themselves of being reduced to certainty, and from which the intention of the parties can be clearly ascertained, but such a decree will be denied if some of the terms of the contract are indefinite and uncertain *or are left open for future determination by the parties.*" Nolan v. Grim, 67 Idaho 138, 173 P.2d 74, 76. (Emphasis herein.)

The trial court is charged with the duty and responsibility of resolving conflicts in the evidence and had the right to consider from respondent Orland J. Arave's statement that the exact boundaries of the lot to be conveyed were at the time of the meeting in Bradbury's office, to be later definitely settled and determined. It is conceded there was no later agreement between the parties or subsequent meeting of their minds; consequently, under the above authorities, as found by the court, a material provision of the agreement was not settled; namely, the amount of land to be conveyed, but was left open for further consideration—hence there was no enforceable contract.

The authorities uniformly recognize the above rule. Carlock v. Johnson, 165 Wis. 49, 160 N.W. 1053; Kull v. Wilson, 37 Minn. 127, 162 N.W. 1072; Dunham et ux. v. Fisher, 191 Wis. 624, 211 N.W. 757.

"In 1 Story on Contracts, § 490, it is said: 'In order to create a contract, it is essen-

tial that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete; and the minds of the parties must assent to the same thing in the same sense.'" Monahan v. Allen, 47 Mont. 75, 130 P. 768 at page 769; Polich v. Severson, 68 Mont. 225, 216 P. 785; Bartholomew v. Clansen, 181 Okl. 88, 72 P.2d 718.

"* * * An offer to buy or sell realty must be so definite and unambiguous that, upon acceptance, the nature and extent of the obligations of the parties to the agreement shall be certain, or of such certainty that the intention of the parties can be collected by fair implication. *It must be complete in itself and not leave terms for future negotiation.*" 66 C.J. 516, #48. See, also, Restatement of the Law of Contracts (by American Law Institute), Volume 1, section 32.' Ray v. Frye, 58 Ariz. 340, 119 P.2d 941 at page 943. (Emphasis ours.)

This principle is considered and upheld in Northwestern Lumber Co. v. Grays Harbor & P. S. Ry. Co. et al., 9 Cir., 221 F. 807.

It is unnecessary to consider other phases of the case stressed by appellants.

Judgment affirmed. Costs awarded to respondents.

BUDGE, HOLDEN, and MILLER, JJ., and PORTER, District Judge, concur.