338 P.2d 96

DeLos VINSONHALER and Adeline Vinson-
haler, husband and wife, Plaintiffs-
Respondents,

v.

NOTUS–PARMA HIGHWAY DISTRICT;
L. H. Larkin and Winifred Larkin, hus-
band and wife; Fred L. Morse, a divorced
man; Effie Seits, a single woman; Loren
Whittington and Ruby Whittington, hus-
band and wife; Bryan Vinsonhaler and
Naomi Vinsonhaler, husband and wife, De-
fendants,

L. H. Larkin and Winifred Larkin, Fred S.
Morse, Effie Seits, and Ruby Whittington
Van Landingham, Appellants.

No. 8385.

Supreme Court of Idaho.

April 15, 1959.

Laurence N. Smith, C. Robert Yost,
Caldwell, for appellants.

144

Vernon K. Smith, Boise, for respondents.

McQUADE, Justice.

This action was brought by the respondents for the purpose of obtaining the use of a bridge. The bridge spans a channel of the Snake River and connects an island with the mainland within Canyon County, State of Idaho. The island is commonly known as Bridge Island, and at the commencement of this action the parcels of land on the island were owned by L. H. and Winifred Larkin, Fred L. Morse, Effie Seits, Loren and Ruby Whittington and Bryan and Naomi Vinsonhaler. Subsequent to the time of commencement of this action, the Whittingtons were divorced, and their "Island" property transferred to Ruby Whittington, who since her remarriage is known as Ruby Van Landingham.

All of the present "Islanders" are defendants-appellants. Plaintiff-respondent DeLos Vinsonhaler is the son and tenant of appellants Bryan and Naomi Vinsonhaler.

The defendant Notus-Parma Highway District is a taxing unit of the State of Idaho, and its area includes the lands of the other parties hereto.

About 1949 the "Islanders" were making plans among themselves to replace a home-made ferry boat with a permanently constructed bridge. In 1950, Larkin and Whittington procured from Malheur County, Oregon, county commissioners one-half of a steel bridge in consideration of their dismantling all of said bridge. The steel was transported to a site near the location of the present-day bridge.

Respondent DeLos Vinsonhaler obtained a permit to build a bridge from the Army Engineers. This permit was issued upon engineering data paid for by Bryan Vinsonhaler.

During the early meetings wherein the "Islanders" were making preparations to secure the construction of a bridge, in addition to those owners named parties defendant herein, there were additional owners Ernest Smith and his wife, who possessed a 60-acre tract.

During the course of those meetings it was agreed by the six landowners that each of the owners would pay one-sixth of the cost of construction of the proposed bridge. At that time, the parties were unaware of the total cost of construction.

At a meeting in July, 1952, a disagreement arose between the parties because appellant Bryan Vinsonhaler and his wife had purchased the Smiths' farm. Bryan Vinsonhaler's total acreage was increased to 118 acres of the island's total 632 acres. The other landowners having more acreage

were the Whittingtons, who were possessed of 315 acres.

At the July, 1952, meeting, Bryan Vinsonhaler offered to divide the one-sixth cost of the bridge which had been allocated to the Smith farm. This offer was rejected. Bryan also offered to divide the cost equally among the remaining five owners on a one-fifth basis. This offer was rejected by the other four "Islanders."

From this point on, the friendship and co-operation of the "Bridge Islanders" discontinued, with the Vinsonhalers being one faction and the other "Bridge Islanders" the other faction.

Construction of the bridge was commenced in July, 1953, by the four "Islanders"—the Larkins, the Whittingtons, Effie Seits and Fred Morse. Melvin Davenport, a civil engineer, had been engaged by Bryan Vinsonhaler for the preparation of an application to secure the construction permit. On the date work began, Davenport appeared at the bridge site and had a conversation with Larkin and possibly Loren Whittington pertaining to payment for engineering services. Davenport had learned of the dispute between Bryan Vinsonhaler and the other "Islanders," and was therefore desirous of knowing for whom he was working. Whittington stated that Davenport would be paid the sum of $120 then due, and to go ahead with the additional work. During that day, Davenport volunteered to compromise matters with Bryan Vinsonhaler and the other "Islanders." Davenport reported that Bryan would pay $1,000 plus $100 already paid for Davenport's services and for the building permit. This compromise offer was not accepted by the other "Islanders."

About the first part of December, 1953, the bridge was completed, and at that time an itemized statement of the cost of construction in the sum of $6,198.45 was sent to Bryan. On the basis of the original six-farm participation, and Bryan having purchased one of the farms, he was assessed $2,066.14 less $100 if he wished to participate in the use of the private bridge. Bryan refused to pay the sum so determined by the others. He made a counter-offer in the sum of $1,044.19, and agreed to pay Davenport $114. This offer was rejected.

During 1951 and 1952, the appellants and some of the respondents visited governmental agencies for the purpose of securing construction of the bridge or assistance toward that end, and substantial assistance in the form of materials and use of mechanical equipment was obtained from the Notus-Parma Highway District. The district refused to assume any obligation for maintenance or ownership of the bridge.

At the time of the negotiations with the highway district, the commissioners thereof were acquainted with the division among

the "Islanders" and understood that one of the parties did not want to pay his share of the cost thereof.

On December 16, 1953, a chain with padlock was placed across the bridge to prevent all of the Vinsonhalers from using it.

Respondents were not parties to the original agreement, nor did they ever agree personally to pay or share in the payment of the costs of construction of the bridge. Respondents assert a claim to the use of the bridge by virtue of their tenant-occupied lands assessed by the highway district which donated materials and machine use toward its construction. They further assert in an amended complaint a right to the use of the bridge by virtue of their having materially assisted in the procurement of the aid donated by the highway district, these contributions inuring to the benefit of the "Islanders" through Bryan Vinsonhaler.

The trial court entered a judgment in favor of respondents, and awarded an interest in the bridge to Bryan Vinsonhaler upon his payment of $1,044.19 to the "Islanders" and $114 to Melvin Davenport. This appeal is taken from that judgment, and error is assigned to various findings of facts and conclusions of law.

■ The donation made by the highway district would in nowise effect a contractual relation between the parties hereto, as that amount extended was an express donation to these parties, the commissioners of the highway district knowing one of the "Islanders" was not assuming his share of the cost of the bridge.

Bryan Vinsonhaler, the "Islanders" and the trial court are agreed that no contract was entered into under any guise between Bryan Vinsonhaler and the "Islanders" who assumed the cost of the bridge. There being no contractual relationship between the parties, the trial court cannot now formulate such an agreement. This was a privately constructed bridge, and the owners may sell an undivided interest therein under the terms and conditions which they see fit. The court cannot formulate a contract for the parties. Sorensen v. Larue, 43 Idaho 292, 252 P. 494; Ohms v. Church of the Nazarene, 64 Idaho 262, 130 P.2d 679; Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Brothers v. Arave, 67 Idaho 171, 174 P.2d 202.

The parties are before the court in an equity action. Therefore, under all of the circumstances, the trial court shall extend a reasonable time in which Bryan Vinsonhaler may accept the offer extended by the Larkins, Effie Seits, Fred Morse and Ruby Van Landingham.

It is expressly understood by respondents that the "Islanders" would not be responsible for any expenditures by them.

The judgment is reversed and the cause remanded to comply with the directions stated herein.

Costs to appellants.

PORTER, C. J., and TAYLOR, SMITH and KNUDSON, JJ., concur.