715 P.2d 989

**HOMES BY BELL–HI, INC., an Idaho corporation, Plaintiff-Respondent-Cross-Appellant,**

**v.**

**Edna Lucille WOOD and Lewis Webster, personal representatives of the Estate of Lola M. Webster, deceased, Defendant-Appellant-Cross-Respondent.**

**No. 15592.**

Supreme Court of Idaho.

March 4, 1986.

V. Dean Dalling, Rexburg, for defendant-appellant-cross-respondent.

Gordon S. Thatcher, Rexburg, for plaintiff-respondent-cross-appellant.

HUNTLEY, Justice.

In 1976 the Teton Dam failed causing flood waters to severely damage Lola Webster's Rexburg, Idaho home. On January 27, 1977 Bell-Hi first approached Webster. The same day Bell-Hi and Webster, who was represented by counsel, executed six documents. The first document provides that restoration of Webster's home to its pre-flood condition would cost $44,938. Six pages of specifications attached to the first document listed the work necessary to accomplish this restoration. Testimony indicated the parties entered this first document for the purpose of procuring disaster relief monies from the United States Bureau of Reclamation (B.O.R.), the sum

being an estimate of the total damage sustained by Webster.

The second document, labeled "Attachment to Contract," explains the first document. This second document explicitly lists the "contract price" as $20,920, with the balance of $24,018 being denominated as an allowance for the "owner's participation," the owner's participation consisting of certain repairs to be accomplished by the owners. Paragraph A–4 of this document reflected that Webster agreed to perform or supply the items in the six page specification list.

In the third document, Bell-Hi, for $1.00 plus expenses up to $200, agreed to help Webster pursue her claim with B.O.R. By its terms this agreement was to run from its January 27, 1977 date of execution until final resolution of Webster's claim for disaster relief. Neither party could modify the agreement except with the express written consent of the other.

The fourth document, a change order, deleted from the specification list items X, Y, Z, AA, T, and DD. The change order valued these items at $7,711.

The fifth document, another change order, restored item DD to the contract, named Bell-Hi as the party responsible to accomplish it, and listed $5,711 as a "net" credit to Webster.

The sixth document increased the "contract price" due Bell-Hi by $2,000 to $22,920 for Bell-Hi's assumption of item DD. The document correspondingly reduced the agreed value of Webster's participation by $2,000, from $24,018 to $22,018.

Later, on February 9, 1977, both parties executed an agreement labeled "Addendum to Original Contract dated 1/27/77." In this document, Bell-Hi agreed to insert sheetrock behind some wall paneling for $3,800. On March 9, 1977, the parties agreed in writing that the total restoration cost equaled $48,743. Bell-Hi asserted this was the originally stipulated restoration cost of $44,938, plus $3,800 for the paneling job, plus an unexplained $5.00. In addi-

tion to the $26,720 Webster expressly agreed to pay Bell-Hi ($20,020 "contract price" + $2,000 for item DD + $3,800 for insertion of sheetrock), Bell-Hi claimed $1,497 for the reasonable value of additional services to which Bell-Hi alleged the parties impliedly agreed. Bell-Hi used the estimated reasonable value of these services, which estimate the district court accepted for purposes of its judgment. Thus, Bell-Hi claims a total judgment of $28,217 from Webster's estate (Webster died on December 1, 1984). Bell-Hi further claims attorney fees, for which the contracting documents provided, and interest.

Webster testified she never knew how much she owed Bell-Hi, thereby defeating the contract for failure of a meeting of the minds as to the price term.[1] The district court agreed, finding no contract, but awarded judgment, apparently on the theory of implied contract in fact, for the reasonable value of services rendered by Bell-Hi, plus interest. Webster appealed the award of interest. Bell-Hi cross-appealed from the failure of the trial court to rule there was a valid written contract and from the denial of attorney fees, and from the finding as to the total principal amount due.

The central issue on appeal is whether the written documents constituted a contract between Webster and Bell-Hi with an agreed price for the work to be done by Bell-Hi. If the language of a written agreement is unambiguous then its construction presents a question of law and the agreement's language will be interpreted according to its ordinary meaning. *International Engineering Company, Inc. v. Daum Industries, Inc.,* 102 Idaho 363, 365, 630 P.2d 155, 157 (1981).

Bell-Hi and Webster executed several documents pursuant to an agreement that Bell-Hi would restore Webster's flood damaged home. Each of these documents related to the same matter and most were executed on the same day, January 27, 1977. Determination of whether these doc-

---

1. Webster had all of the documents reviewed by   her attorney prior to execution.

uments created a contract and, if so, the amount of the price term, requires analysis of all the instruments read as a whole. *See Charpentier v. Welch,* 74 Idaho 242, 246, 259 P.2d 814, 816 (1953); *First National Bank of Idaho v. Reins,* 42 Idaho 720, 725, 248 P. 9, 10 (1926). The first document, dated January 27, 1977, stipulates that restoration of Webster's home to its pre-flood condition would cost a total of $44,938. Evidence indicated the parties intended this estimate of damages to be used solely for obtaining disaster relief moneys from the B.O.R.

The parties executed the second document, entitled "Special (Teton Dam Failure) Attachment to Contract," the same day. It explicitly designates the "contract price" as $20,920, the "replacement price" as $44,938, and the difference, or "owners participation," as $24,018.

Other documents executed January 27, 1977 add to Bell-Hi's duties and correspondingly increase the contract price. The fifth document, a change order, assigns Bell-Hi the duty of removing and replacing Webster's driveway (item DD). The sixth document expressly amends the "contract price" to "$20,920.00 + $2,000.00 For [item] DD...." This series of documents executed on January 27, 1977 created a contract with an express and unambiguous price term of $22,920.

In a subsequent change order, dated February 9, 1977, and marked "addendum to Original Contract dated January 27, 1977," Bell-Hi agreed to install sheetrock in Webster's home for $3,800. This increased the total express contract price to $26,720.

The documents described above initially and unambiguously established the contract price at $20,920. Two straightforward change orders increased the express contract price, first by $2,000, then by $3,800, to a total of $26,720. Webster owes Bell-Hi this amount under the express contract.

Bell-Hi claims extras of $1,497 based on the reasonable value of certain work it performed (which values the dis-

trict court accepted). The general rule is that where the conduct of the parties allows the dual inferences that one performed at the other's request and that the requesting party promised payment, then the court may find a contract implied in fact. *Clements v. Jungert,* 90 Idaho 143, 153, 408 P.2d 810, 815 (1965); *Bastian v. Gafford,* 98 Idaho 324, 325, 563 P.2d 48, 49 (1977). The record shows Bell-Hi performed work as requested by Webster and in consideration of her promise of payment. Therefore, Bell-Hi is entitled to a judgment of $28,217 (plus attorney fees and interest, discussed below).

Since Webster and Bell-Hi created a valid contract, that contract's provision for attorney fees incurred pursuant to collection applies. We remand to the trial court for fixing of attorney fees both at the trial and appellate levels.

Bell-Hi also claims interest from the May 10, 1977 date of completion to the date of judgment. Since we have determined the contract as amended established the amount due Bell-Hi, Bell-Hi is entitled to prejudgment interest on the amount due under the express contract. *Mitchell v. Flandro,* 95 Idaho 228, 235, 506 P.2d 455, 462 (1972). I.C. § 28–22–104(1) (1977–81) entitles Bell-Hi to 8% annual interest on the $26,720 written contract amount from May 10, 1977 to June 30, 1981. I.C. § 28–22–104(1) (1981–85) entitles Bell-Hi to 12% annual interest from July 1, 1981 to the date of the original trial judgment, January 13, 1984. *Mitchell,* 95 Idaho at 235, 506 P.2d at 462.

Reversed and remanded for entry of judgment in the sum of $28,217 plus interest, costs, and attorney fees. Costs on appeal to Bell-Hi.

DONALDSON, C.J., and BAKES and BISLTINE, JJ., concur.

SHEPARD, Justice, dissenting.

The record establishes that Webster, whose home was severely damaged by the flood, while not unintelligent was inexperienced in construction matters. A myriad

of documents were tendered to and executed by Webster. That documentation began stating the cost of the restoration of Webster's home at some $44,000.00. A second document was executed stating the contract price as approximately $21,000.00. Thereafter additional documents were executed either raising or lowering the cost of repairs to be performed by Bell-Hi. At the completion of the work, Webster executed a completion certificate which refers to still another contract document which was not shown to be in existence. No matter how one may attempt to recapitulate the so-called contract documents, they do not total the sum of $26,720.00 demanded by Bell-Hi in a letter to Webster, nor do they total the sum of $30,728.00 which Bell-Hi demanded from Webster's attorney, nor $31,705.00 demanded by Bell-Hi in its request for arbitration, nor $30,805.00 demanded in Bell-Hi's complaint in the instant action, nor with Bell-Hi's demand as verbalized at trial in the sum of $32,215.00.

An extensive bench trial was held, during which substantial evidence was presented regarding the value of the work performed by Bell-Hi. Following trial the court issued its decision holding that, "It is clear that various contract documents were executed by the parties. However it is not clear what the parties actually agreed upon." The court further held, "The defendant recognized that she owed the plaintiff money but she was not certain of the amount that she owed. The court cannot find that the defendant defended the action of the plaintiff frivolously, unreasonably or without foundation." Therefore, the court entered judgment for the plaintiff in the sum of $26,069.00 but later reduced the amount of that judgment by $2,430.00 representing work that had been done by a third party but for which Bell-Hi had not paid the third party.

Thereafter Webster took this appeal contending that she owed no more than the sum of $25,120.00 which amount was promptly deposited by Webster into court. Since Bell-Hi's attorneys had not been paid by Bell-Hi they promptly filed a claim of lien against said sum deposited in court.

In my view the record adequately supports the decision of the trial court that there was no valid written contract existing between the parties since there was no meeting of the minds. This Court has consistently adhered to the proposition that "in order to constitute a contract, there must be a distinct understanding common to both parties. The minds of the parties must meet as to all of its terms, and, if any portion of the proposed terms is unsettled and unprovided for, there is no contract. *Brothers v. Arave*, 67 Idaho 171, 174 P.2d 202 (1946) (*quoting Phelps v. Good*, 15 Idaho 76, 96 P. 216 [1908]).

This Court, solely on the basis of the written documents, substitutes its finding of fact for that of the trial court who saw the witnesses and heard the testimony, and thereafter found the non-existence of the contract. I would affirm that decision of the trial court. Likewise would I affirm the decision of the trial court that since there was no written contract there could be no award of attorney fees since the action was not defended frivolously or unreasonably.

I would also affirm the decision of the trial court in entering judgment for Bell-Hi on the basis of *quantum meruit*, however, reverse the decision of the trial court wherein it awarded prejudgment interest to Bell-Hi. In my view the claim of Bell-Hi was not based on an open account, but rather constituted a single transaction between Bell-Hi and Webster. *See Governor-Department of Industrial Development v. Dalton*, 560 P.2d 971 (Okla.1977); *Heron v. Gaylor*, 46 N.M. 230, 126 P.2d 295 (1942). Further, I would hold that the claim of Bell-Hi was unliquidated since obviously the parties never agreed on the value of the repairs nor was the amount due susceptible of ascertainment by computation. At trial the testimony of the value of Bell-Hi's work ranged from $10,000.00 to $32,000.00.

In my view the majority has egregiously invaded the province of the trial judge and has in effect entered a judgment in excess

of $45,000.00 and further exacerbated the situation by awarding attorney fees which Bell-Hi's erstwhile attorneys have certified as being in excess of $20,000.00.

In sum, I would affirm the trial court on the issue of the existence of a written contract, affirm the trial court on its *quantum meruit* award, affirm the trial court on its denial of attorney fees, but reverse the trial court on its award of prejudgment interest.