JAMES P. DAVIS v. TOWN OF ST. ALBANS.

*Soldier's Bounty. Vote. Credit. Common Counts. Express Promise.*

Under a vote to pay $300 bounty "to volunteers for the purpose of filling the call for forty-six men required by the government for 300,000," the plaintiff, who enlisted to the credit of the town, was not entitled to count as one of said forty-six men, unless he was mustered in to the credit of the town before that number had been otherwise filled.

Where the legal evidence tended strongly to show that the plaintiff was not mustered into the service seasonably to apply on said quota, and the plaintiff's counsel did not wish to submit any question to the jury, the decision of the court that the plaintiff was not entitled to recover was conclusive upon him that he did not come within the vote under which he claims.

Towns are not legally bound to pay bounties to soldiers without an express undertaking on their part.

ASSUMPSIT to recover a town bounty. Plea, the general issue, and trial by jury, September. term, 1869, WILSON, J., presiding.

The declaration contained a special count upon a vote of the defendant town, passed December 2, 1863, and also the general counts. The plaintiff introduced general order No. 2, from the adjutant general's office of Vermont, dated November 2, 1863, from which it appeared that on the said 2d day of November the quota of the defendant town, under the call of October 17, 1863, was forty-six men, and that there was a deficiency at that date against said town under the draft of fifty-six men. The plaintiff also introduced a certified copy of "Town Quota Ledger," from the adjutant general's office, from which it appeared that the full quota of the defendant town under the call of October 17, 1863, was seventy-nine men, and that at the date of said call said town had a surplus credit of thirty-three men. The plaintiff then introduced the record of a vote of the defendant town, passed at a town meeting held on the 2d day of December, 1863, together with the warning in pursuance of which said meeting was held. The vote was as follows:

"*Resolved*, That a tax of 110 cents on the dollar be laid on the grand list of the town of St. Albans for the purpose of paying a bounty of $300, to be paid by the selectmen of said town to volunteers for the purpose of filling the call of forty-six men re-

69

quired by the government for 300,000 men, said money to be paid to said volunteers when they are mustered into the service of the United States."

The plaintiff also introduced, against the objection of the defendants, records of votes passed by the defendant town at town meetings held on the 14th day of June, 1864, and on the 11th day of August, 1864, from which it appeared that the defendant town at those dates voted to pay bounties to volunteers who should enlist to its credit. The plaintiff then introduced, against the objection of the defendants, a certified copy of the muster-roll of Co. A, 17th regiment of Vermont volunteers, for the purpose of showing that the plaintiff was mustered into said company and regiment, to the credit of the defendant town, on the 5th day of January, 1864, at St. Albans. The plaintiff also introduced, against the defendants' objection, for the purpose of showing application of volunteers enlisted upon the several quotas, a certified copy of a dispatch from the provost marshal general to the adjutant general of this state, together with a certified copy of general order No. 6, dated December 21st, 1863, issued by the adjutant general of this state upon receipt of said dispatch.

The plaintiff then introduced, against the defendants' objection, a certified copy of record from the adjutant general's office, containing the names of the several volunteers credited to the defendant town subsequent to the call of October 17, 1863, for the purpose of showing the plaintiff's muster-in, and for the further purpose of showing that he applied upon the quota of forty-six men due from the defendant town under call of October 17, 1863.

The plaintiff also introduced parol evidence tending to show that he was mustered into company " A," 17th regiment Vermont volunteers, at St. Albans, in the afternoon of January 5, 1865, and that he enlisted with the expectation of getting a town bounty.

It appeared, from testimony introduced by the defendants, mainly from record evidence from the adjutant general's office, that thirty-four men had been mustered into the United States' service, to the credit of St. Albans, on the quota under the call of October 17, 1863, on or before the 4th day of January, 1864,

and that on the 5th day of January, 1864, twelve more men, making forty-six in all, were mustered in at Brattleboro, to the credit of said town. James S. Peck, assistant adjutant general, testified, in substance, that it appeared, from the record of the adjutant-general's office, that said forty-six men applied on the quota of the town of October 17, 1863, as he understood it; that said forty-six men all appeared to have been credited before the plaintiff, but the dates on the records might show that notice of the muster-in of the plaintiff was prior to that of some of the forty-six men. Victor Atwood, one of the selectmen of St. Albans in 1863–4, testified, in substance, that the selectmen recruited men for the service; that the order came to fill the quota under the call of October 17, 1863, and they also received order No. 6, urging them to recruit men for the old regiments, and that they did so, and understood that men going into the 17th regiment, which was then being raised, could not apply on said quota, and for that reason they did not urge men to enlist in that regiment, or promise them any bounty; that he, Atwood, did most of the enlisting, and he did not remember of having had any conversation with the plaintiff about enlisting; that he took the men to Brattleboro on the 4th of January, and they were mustered in on the 5th of January, 1864, " I think before noon on that day, but it might have been later; I am quite sure it was before I went to dinner "; that he himself paid a bounty to forty-four of said forty-six men. It was not claimed by the plaintiff that the defendants paid any who enlisted into the 17th regiment, under that call, a bounty.

Upon enquiry by the court, the plaintiff's counsel said they did not claim there was any thing for the jury to try; and upon the evidence, the substance of which is stated above, the court decided the plaintiff was not entitled to recover. Exceptions by the plaintiff.

*M. Buck*, and *R. C. Benton*, for the plaintiff, maintained (I.) that the plaintiff applied on the quota of St. Albans, under the call of October 17, 1863, and was therefore entitled to the bounty voted on the 2d of December, 1863. (II.) There is resting upon

towns, as component parts of the state, and as public corporations, an obligation to perform whatever duty is imposed on them by paramount authority, whether that authority be vested in the courts in the state, or in the general government, and that duty when imposed must be performed independently of any vote of the municipality, whether it be to raise a tax imposed by the legislature, or to build a bridge ordered by the court, or to furnish men ordered by the general government, through the state authorities, for the army. A town refusing to pay its proportion of the expense of building a bridge ordered by the court to be built at the expense of several towns, may be compelled, in an action of assumpsit, to pay its proportion to the town that builds the bridge. *Brookline* v. *Westminster*, 4 Vt., 224. The orders upon the towns for men for the army, after it became necessary to pay bounties to raise them, were equivalent to orders for money or property, for the soldier's town credit had come to have a pecuniary value, and was recognized as having a market value, and was the subject of no inconsiderable traffic. And when a town voted to pay bounties for men to enlist, it was not an offer of a gratuity, but an offer to pay for that which they could not get without pay. The plaintiff being a citizen of the defendant town, had a common liability with the other citizens of the town imposed by this call for men, which is discharged in the payment of the tax voted to provide the bounties necessary to be paid. And when he enlisted to the credit of the town, he furnished more than his proportion of the property ordered by the government, and if he did not apply on the quota in question, he did on some later one, and when this property was enhanced in value. There was a joint liability on all the citizens of the town to furnish this property. The plaintiff has furnished more than his proportion, not as a gratuity, but expecting pay for it. The town has appropriated it knowing of this expectation.

*Hill & Safford, Dewey & Noble,* and *H. S. Royce,* for the defendants.

The opinion of the court was delivered by

BARRETT, J.   The special count is on the vote of December 23, 1863, to pay $300 bounty " to volunteers for the purpose of filling the call for forty-six men required by the government for 300,000." The selectmen by their own exertions procured said forty-six men, the last twelve of whom were enlisted and sent forward from St. Albans on the 4th, and were mustered in at Brattleboro on the 5th of January under the personal superintendence of one of the selectmen.   The plaintiff did not enlist on the application of the selectmen, nor had he made himself enlisted to be credited to the town on that quota until the act of being mustered in on the 5th of January.   In order to maintain this suit on that count, he must come within the scope and operation of that vote.   He was not entitled to count as one of said forty-six men unless he was mustered in to the credit of the town before that number had been otherwise filled.

No doubt he was properly, in fact, credited to the town.   But that is not enough.   He must have been properly creditable as one of the forty-six, in order to entitle him to recover.   Whether he was so or not depends on the question whether he was mustered in before that forty-six men had been supplied by the direct exertions of the selectmen.   The evidence tended strongly to show that the twelve men were mustered in at Brattleboro, at an earlier hour, of the 5th of January, than the plaintiff was mustered in at St. Albans.   As counsel did not wish to submit any question to the jury, it was for the court to render judgment upon such a state of facts as they regarded proved by the evidence.   The judgment that was rendered imports either that the court found affirmatively that the twelve men were mustered in at Brattleboro before the plaintiff at St. Albans, or that the court failed to find that the plaintiff was mustered in seasonably to make him one of the forty-six,— either of which might warrantably have been the case upon the evidence; and in either event the plaintiff would have failed to make out his right to that bounty.   This being so, he can not now be heard to say either that the court unwarrantably found the fact against him, or failed unwarrantably to find it in his favor.

As this case stands upon its peculiar facts, with reference to the familiar principles of law that govern the respective rights and liabilities of the parties, it can be of no service to discuss it under any wider view. The plaintiff does not show himself to come within the vote under which he claims.

As to the point made under the general counts, it is sufficient to say that no case has yet gone so far as *professedly* to hold that any thing short of an express undertaking will make the town legally bound to pay a bounty to a soldier.

The judgment of the county court is affirmed.