CHESTER C. HAYES, PLAINTIFF-APPELLANT, v. EMILE H. KLUGE, DEFENDANT-APPELLEE.

Submitted July 6, 1914—Decided November 16, 1914.

1. Where the determination of the question of acceptance of goods, under the Sales act, depends upon disputed testimony, and there is evidence, which if credited, tends to show non-acceptance, the fact that the weight of the testimony may favor acceptance does not warrant a trial court in resting a direction of a verdict upon it, for it is the function of a jury to settle disputed questions of fact, and to draw the inferences therefrom when they are in doubt.
2. The rule adopted in some jurisdictions, that when cross-motions for a verdict are made all questions of fact are left with the court and not submitted to the jury, has never been adopted in this state.

On appeal from the Bergen County Circuit Court.

For the appellant, *Charles W. Hulst.*

For the appellee, *Edmund G. Stalter.*

The opinion of the court was delivered by

WILLIAMS, J. The plaintiff, an artist, brought his suit to recover the value of a portrait of defendant's wife and child, painted by him, and the cost of framing it. The defence to the action is that the portrait was to be absolutely satisfactory to the defendant and his wife, and if not, that then defendant should not be bound to accept and pay for it. The portrait was painted, framed and delivered, but was not painted to the satisfaction of the defendant, who refused to pay for it, and on the trial defendant had judgment.

From which plaintiff appeals on the single ground that "the trial court denied plaintiff's motion to direct a verdict for the plaintiff," and in his brief says: "The motion for the direction of a verdict for the plaintiff was upon the ground that the defendant accepted the portrait, and kept it

an unreasonable time without objecting. The denial of this motion is the only ground of appeal relied upon." While this narrows the issue, a brief statement of the facts proved in the case will be necessary.

In April, 1912, the parties to this action entered into a verbal contract by which the plaintiff-appellant, an artist, agreed to paint for defendant a portrait of his wife and child for the sum of $750 and to furnish a frame therefor for the further sum of $60. Defendant testifies that plaintiff promised to make the portrait "absolutely satisfactory" to him and his wife, and "if it was not satisfactory, it would be made satisfactory, or we would not have to take it."

It is very dangerous to agree to perform a contract to the satisfaction of another, and the maker of such an agreement does so at his own risk; this is especially true in the case of a portrait, where opinions as to its excellence so seldom coincide.

In *Zaleski* v. *Clark,* 44 *Conn.* 218, cited in *Gwynne* v. *Hitchner & Yerkes,* 66 *N. J. L.* 100, "the contract was to make a bust to the satisfaction of defendant. The court held that as the bust was to be satisfactory to the defendant, it was for her alone to determine whether it was so, and it was not enough to sustain the action for the price that her dissatisfaction was unreasonable; that the contract was not to make a bust that she ought to be satisfied with, but one that she would be satisfied with; that a contract to make a bust perfect in every respect and one with which she ought to be satisfied is one thing, and undertaking to make one with which she will be satisfied is quite another thing. The former can only be determined by experts, the latter only by defendant herself." The trial court in the present case charged the jury in almost these identical words without objection or exception by plaintiff's counsel.

There was testimony tending to show that in the latter part of July, 1912, defendant was notified by the artist to come to his studio to inspect the portrait, and he went, accompanied by his wife and two friends. Both the defendant

and his wife expressed their dissatisfaction and pointed out several defects and requested that certain changes be made, which the plaintiff agreed to make, so that the portrait should be absolutely satisfactory to defendant and that when it was ready he would notify him. On August 28th, 1912, the plaintiff wrote to defendant that the portrait was ready for him at any time, and October 25th, 1912, the portrait was delivered to defendant's chauffeur, who took it to defendant's home at Englewood, New Jersey, during his absence, and a day or two later defendant came home, unwrapped the picture and placed it on a pedestal in the presence of his wife and a friend, who had been present at the inspection in the artist's studio in July. Defendant and his wife testify that the portrait was unchanged and in the same condition in which it had been at the studio when inspected in July, and it was then placed in a storeroom to "wait what would come next." Defendant further testified that the next day he telephoned to plaintiff at his residence but could get no reply; that he then called up the janitor, who told him the plaintiff was out of town; he then "went West," and "I finally came back from the West. I got hold of Mr. Hayes one day; telephoned over to him. I told Mr. Hayes: 'I am anxious to see you. I want to straighten out the question of this picture. It is not satisfactory, and I want to see you right away.' Mr. Hayes said, 'We will be very glad to come down.' He said, 'I cannot come to-day, but will come to-morrow at twelve o'clock.' The next day I was sitting at my desk at twelve o'clock and waited an hour, and Mr. Hayes did not appear. He did not send an excuse; he did not notify me why he did not appear, and I did not know why, what was his reason that he did not show up. I was ready and very anxious to talk this matter over with him; I had to go out of town again, and wanted to settle it." The plaintiff fixes the date of this telephone conversation to be December 21st, 1912.

The portrait was admitted in evidence at the trial and defendant's wife pointed out to the jury the defect which had been mentioned to the artist which had not been remedied.

The plaintiff and defendant did not meet or have further communication until defendant received a letter from plaintiff's lawyers December 31st, 1912.

The plaintiff contends that defendant accepted the portrait and kept it for a period of fifty-five days, from October 28th to December 21st, 1912, without any objection, and that any breach of promise or warranty was thereby waived, and the defendant became bound to pay the entire purchase price to plaintiff, and he cites 4 *Comp. Stat.,* p. 4658, §§ 48, 49:

"48. Acceptance by buyer. · The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when after the lapse of a reasonable time he retains the goods without intimating to the seller that he has rejected them." *Pamph. L.* 1907, *p.* 329.

"49. Acceptance of goods. Liability for breach of promise or warranty; notice of breach. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor." *Pamph. L.* 1907, *p.* 329.

In both these sections we have to consider the question of reasonable time as applied to the present case.

In *Burr* v. *Adams Express Co.,* 71 *N. J. L.* 263, at *p.* 269, Mr. Justice Pitney, speaking for the Supreme Court, said:

"In this as in all cases where questions of reasonable time, opportunity or the like are at issue, the determination of what is reasonable where the facts are in dispute, or the inference to be drawn from undisputed facts is in doubt, is a question of fact and not of law."

As there was testimony tending to show that defendant never accepted the picture, but on the other hand always objected that it did not comply with the contract, the fact that its truth was disputed did not raise a question of law, but one of fact; it would have been error not to submit it to the jury; this was done and no exceptions taken to the form.

The trial judge in his charge to the jury on this point says: "Was the taking of this picture on the 25th of October, and holding it under the circumstances which have been shown in the evidence, an unreasonable delay? Was it an acceptance? This is a question of fact for you, and if you find that it was an acceptance, or an unreasonable delay on the part of the defendant, then again your verdict should be for the plaintiff, notwithstanding the terms of the bargain."

At the conclusion of the charge the judge asked both plaintiff's and defendant's counsel if there were any exceptions by either. Plaintiff's counsel replied as follows: "You have made it clear. No, I have no exceptions."

Counsel having heard this charge, it was his duty to take an exception if he wished to challenge it; on the contrary he stated to the trial judge that he had no exceptions to make to such charge. *Benz* v. *Central Railroad of New Jersey,* 82 *N. J. L.* 197; also cited in *Kargman* v. *Carlo,* 85 *Id.* 632.

The new Practice act does not relieve a party from pointing out at the trial to the judge the portions of the charge to which he objects, as heretofore, nor from making objection to a refusal to charge a request, if it is intended to make the same the basis of an appeal. The new Practice act has made no change in that regard, except that bills of exception are no longer necessary. *Miller* v. *Delaware River Transportation Co.,* 85 *N. J. L.* 700.

The contention of appellant's counsel that when cross-motions for a direction of a verdict are made that all questions of fact are left with the court, and not submitted to the jury, is without merit. This rule has been adopted in some jurisdictions, but never in this state. *Ryle* v. *Manchester Building and Loan Association,* 74 *N. J. L.* 840;

*Gardner & Meeks Co.* v. *Herold,* 76 *Id.* 524; *Philadelphia Brewing Co.* v. *McOwen, Id.* 636.

The rule in New York State as laid down in 46 *Cent. Dig.* 1260, citing many decisions in that state, is as follows: "Where both parties unite in requesting the court to direct a verdict, they are deemed to agree that the facts may be decided by the judge, and, there being any evidence to sustain it, his decision will be sustained."

Also, "A request by both parties for the direction of the verdict waives the right to have any question submitted to the jury."

It will be noticed that in the first quotation the word "may" is used, and in *Lake Superior Iron Co.* v. *Drexel,* 90 *N. Y.* 87, the following language is used: "It seems not to be required of the court to decide the questions of fact. It may refuse both requests for the direction of a verdict, and submit the case to the jury."

In *Fitzsimons* v. *Richardson, Twigg & Co. (Supreme Court of Vermont),* 84 *Atl. Rep.* 811, at the close of the evidence, each party moved for a directed verdict. The court in its opinion says: "The defendants claim that, because of the two motions, it was the duty of the court to direct a verdict one way or the other. But this claim is unsound. Where it affirmatively appears that neither party wishes to go to the jury, it is for the court to direct such a verdict as in its judgment the evidence requires. *Davis* v. *St. Albans,* 42 *Vt.* 585; *Robinson* v. *Larabee,* 58 *Id.* 652; *Taylor* v. *Coolidge,* 64 *Id.* 506; *Mascott* v. *First National Fire Insurance Co.,* 69 *Id.* 116. There is nothing novel about this practice, for the parties in civil cases can always by agreement substitute the court for the jury. But the mere fact that each party to a cause moves for a verdict in his favor does not amount to a consent that the case shall be taken from the jury. One who claims that the evidence is all his way does not waive the right to claim that, at least, some of it is his way, and that right is not affected by the fact that the other party moves that a verdict be directed in his favor. *Woodsville, &c., Bank* v. *Rogers,* 82 *Id.* 468."

In the present case defendant moved for a verdict, which was refused. The plaintiff then moved for a verdict on the ground that the defendant accepted the portrait and kept it an unreasonable time without objecting. The court denied this motion on the ground that a question of fact for the jury was involved, the merits of each motion being considered separately. The fact that both parties moved for a directed verdict did not require the trial court to direct a verdict, the motions not amounting to a consent that the case be taken from the jury.

The judgment must be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 14.

*For reversal*—None.