(No. 6766.    June 29, 1940.)

C. R. REYNOLDS, Respondent, v. BLACKWELL LUMBER CO., a Corporation, Appellant.

[104 Pac. (2d) 19.]

W. F. McNaughton, for Appellant.

Carl M. Buell and Wernette & Crowley, for Respondent.

BUDGE, J.—This is an action for a balance claimed to be due for logs sold and delivered by respondent pursuant to a contract which provided in part as follows:

"NOW, THEREFORE, the said party of the first part agrees to sell and deliver to the said party of the second part in booms in slack water at St. Joe, Idaho 500,000 feet more or less of white pine logs of the sizes and dimensions hereinafter specified upon the following terms and conditions:

"(1) The said party of the first part agrees to deliver said logs at his own cost and expense afloat in booms in the slack water of the St. Joe river at St. Joe, boom sticks to be furnished by the party of the second part, for the purchase price of $16.50 per thousand feet log scale. . . . . "

The price of $16.50 per thousand applied to logs delivered in the year 1936. It is conceded that the contract was modified to increase the price to $18 per thousand for logs delivered in 1937.

Under this contract a considerable quantity of logs was delivered and paid for by appellant during the years 1936 and 1937, about which there is no controversy. This action sought recovery for certain logs alleged to have been delivered but not paid for by appellant consisting of two lots, one lot allegedly deposited in the river early in the spring of 1936 and becoming co-mingled with a large quantity of logs of numerous operators by reason of the breaking of booms, and the second lot consisting of logs stranded in the river in the drive of 1936 because of water conditions

and which came down the river early in 1937 before booms were placed to catch and retain them. Briefly, the facts sought to be established by respondent with relation to these two lots of logs were as follows: That respondent in 1936 kept account of the number of logs placed in the river to be floated down; that a short time after logs were placed in the river the river started to rise and a jam formed at Conrad Crossing on the St. Joe River about twenty-seven miles above Avery which jam later broke and a number of million feet of logs swept down the St. Joe River, cleaning everything in the river from the place of the jam to Cour d'Alene Lake; that respondent's logs went down the river and co-mingled with a number of million feet of other logs belonging to appellant and other operators; that no attempt was made to hold the logs at St. Joe, but an attempt was made to hold the logs at St. Maries, but high water developed at St. Maries immediately; that after about 300,000 feet of logs had been sorted, by a sorting company, including about 5,000 feet of logs belonging to respondent, respondent's logs being placed in an improvised pocket, the water became so high the booms on the sorting works were cut, permitting all logs to pass through toward Chatcolet and Coeur d'Alene Lakes, and the logs were then caught in a large boom in Coeur d'Alene Lake and co-mingled with other logs belonging to appellant. The second lot of 160 big logs, consisted of logs which were so large that they had to be left in the river during the 1936 drive. Early in the spring of 1937, when the water started to rise, appellant was informed that these logs would be coming down and a request was made for the placing of boom sticks to intercept and catch the same and that these logs were never sorted and placed in separate booms for respondent, boom sticks were not furnished, the logs were not separately scaled, scale reports were not furnished respondent, and respondent had not been paid therefor.

Appellant prosecuted this appeal from a judgment in favor of respondent and urges first that the action being one on contract for the sale of goods, respondent must prove compliance with the contract before he can recover, and urges that under the terms of the contract respondent was to de-

liver the logs *in booms* afloat in the slackwater of the St. Joe River at St. Joe and that appellant was then to scale the logs and pay certain prices for those accepted and that since the logs in controversy were not delivered in booms afloat in the slackwater of the St. Joe River, were not scaled and accepted by appellant, title remained in the seller.

It does not appear necessary to determine whether respondent did or did not comply fully with the terms of the contract with respect to delivery or to place an interpretation on the terms of the contract inasmuch as respondent relies upon receipt of the logs by appellant and appropriations by it to its own use. Section 62–308, I. C. A., provides:

"WHAT CONSTITUTES ACCEPTANCE. The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he rejected them." (55 C. J., p. 307, sec. 298; p. 503, sec. 495; *West v. Prater,* 57 Ida. 583, 67 Pac. (2d) 273; *Gross Mfg. Co. v. Redfield,* 48 Ida. 399, at 403, 282 Pac. 487; *Tweedie Footwear Corp. v. Roberts Schofield Co.,* 48 Ida. 777, at 782, 285 Pac. 476; *Sutton v. Clarke,* 42 Or. 525, 71 Pac. 794; *Western Forest Products Co. v. Woodhead Lumber Co.,* 92 Cal. App. 194, 267 Pac. 901.)

Appellant's further contention is that these logs were never received or appropriated by it and that they therefore are not liable to respondent. We have therefore, on this phase of the case, the sole question of whether or not there was sufficient competent evidence to support the verdict of the jury and the judgment based thereon.

There is evidence that a memorandum was kept of the number of logs cut and put in the river, Mr. Reynolds handling practically every log with a hook, counting them and checking with his men each evening. With relation to the lot allegedly delivered in 1936 Reynolds testified he delivered 3,605, but that he received scale for only 2,446 logs, making a shortage of 874 logs. With reference to the lot of "big"

logs which went down the river about five weeks before the rearing of the drive of 1937 started, Mr. Reynolds count was 187 "big" logs. Mr. Reynolds, with 30 years experience in estimating and scaling logs, estimated the 874 logs would scale 56,400 feet and that the "big" logs would scale 57 or 58 thousand, but made claim for 40,000 only. Mr. Reynolds was corroborated by several witnesses in this respect. There was evidence that it was the duty of the Lafferty Transportation Company, under an agreement with appellants, to stop, sort and brail all logs from the St. Joe River purchased by appellants and to tow the same to appellant's storage. There is further evidence that respondent upon discovery of the shortage searched the river, the shores of Coeur d'Alene Lake and went to every saw mill from St. Maries to Kilpatricks, talked with their office forces and looked at the deck scale and found only 8 logs at the Rogers Lumber Company at St. Maries and a total of 37 or 38 logs scattered along the shores of the lake and river which count was multiplied by four in order to be perfectly safe and the resultant number was deducted from the computation made by respondent of logs unpaid for. There is further evidence that early in 1936 at the time of the high water, the jam, and the cutting of the boom to save the sorting works, all logs went down the river and into the lake several miles below, respondent's logs being placed in appellant's booms and co-mingled with other logs of appellant. A few days later when the jack was moved back to St. Maries and the boom closed sorting proceeded and for a period of approximately one month all of respondent's logs were put into and co-mingled with appellant's logs and not separately boomed. There is further testimony that all employees of the Lafferty Transportation Company knew respondent's brand and that logs with respondent's brand were going to appellant and accordingly every effort was made to see that such logs did go to appellant. It could be well conceded that this is a twilight case and therefore difficult of determination since there is no positive evidence that these missing logs were actually appropriated by appellant. However there are many facts and circumstances that support respondent's contention, both positive evidence of the placing of the logs in controversy in the river and evidence by

elimination that the logs reached no other mill operator and were not stranded, with the exception of the few above mentioned and which number was deducted from the calculation. There is a conflict in the evidence touching some of the material questions raised. All the facts and circumstances were submitted to the jury and no reversible error appears in the instructions and after a careful consideration of the entire record we cannot say that there is not sufficient competent evidence to support the verdict and the judgment based thereon.

Appellant urges that the court erred in rejecting the record or deck scale of all logs bearing Reynolds brand which were sawed by appellant or its assigns, urging that this evidence would have shown how many feet of logs, bearing plaintiff's brand were received at the mills. In this connection it appears that appellant alleged in its answer the number and the footage of the logs which it concededly received and paid for and it likewise appears that respondent accepted the amount allegedly received by appellant as the basis upon which to calculate the number of logs not paid for but which respondent contends were delivered to appellant. Since respondent admitted receipt by appellant of the number of logs appellant alleges it received it does not appear that there was any error in rejecting such testimony.

The judgment is therefore affirmed. Costs awarded to respondent.

Ailshie, C. J., and Givens, Morgan and Holden, JJ., concur.