RUBBER CORP. OF AMERICA, APPELLEE, *v.*
TANNEY-COSTELLO, INC., APPELLANT.

(No. 4057—Decided January 18, 1950.)

■■■■■■■■

*Messrs. Buckingham, Doolittle & Burroughs,* for appellee.

*Mr. George B. Wells* and *Mr. Charles F. Scanlon,* for appellant.

DOYLE, J. The Rubber Corporation of America sued Tanney-Costello, Inc., upon an account for a claimed balance due arising out of a contract of sale of a quantity of polyvinyl chloride (rigid reground) to the defendant.

Defendant by amended answer alleged that the material delivered did not correspond to the description and furnished samples, and that it had rescinded the transaction. In addition, it, by amended cross-petition, sought damages for loss of profit (waived on opening statement), cost of freight, and reasonable charges for storage.

The plaintiff's reply denied the allegations in the amended cross-petition, and, while admitting that defendant refused to accept the goods, and offered to return them, denied a breach of warranty and a rescission of the sale.

The case was presented to a jury in the Court of Common Pleas of Summit County. A verdict was returned in favor of the defendant on the petition, and in favor of the defendant on the amended cross-petition, but with no damages assessed. Plaintiff then filed a motion for judgment *non obstante veredicto*, asking for the full amount claimed for the reason that "notwithstanding its [the defendant's] ostensible effort to rescind and claim that there was a breach of warranty, the defendant, inconsistently with plaintiff's ownership of the goods, attempted to resell them as its own, thereby waiving any right to rescind."

This motion was sustained, and judgment was rendered for the plaintiff and against the defendant for the full amount sought—viz., $4538.30, with interest at 6% from February 23, 1947. The defendant's amended cross-petition was dismissed.

The trial court's ruling is explained by its opinion filed with the papers in the case. The opinion reads in part:

"The plaintiff's motion for judgment notwithstanding the verdict calls upon this court to determine whether or not the defendant's conduct in attempting to sell the rigid reground polyvinyl chloride constitutes a waiver of its right to rescind.

"The undisputed evidence shows the following facts. The defendant purchased said material from plaintiff, under a contract (exhibit No. 5) dated January 15, 1947. This merchandise was actually received by the defendant in Akron on or about February 25, 1947. On February 26, 1947, the defendant wrote the plaintiff (exhibit 13) that it found that the shipment was not according to the contract, but that it would advise the plaintiff more definitely as to the acceptability of the merchandise after canvassing its customers for their reaction.

"Then, for a period of about two weeks, the defendant proceeded to offer the material for sale to its customers.

"On March 7, 1947, the defendant sent plaintiff a telegram (exhibit 7) rejecting the material 'based on our customers' reports.' No chemical analysis was made of this material until June, 1947, at a time subsequent to the commencement of this law suit.

"The defendant buyer cannot be deemed to have 'accepted' the goods until it had a reasonable opportunity of examining them, for the purpose of ascertaining whether they conformed to the contract (Section 8427, General Code).

"However, 'the buyer is deemed to have accepted the goods * * * when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller * * *.' Section 8428, General Code.

"The sale, or attempted sale, of nonperishable goods, by a buyer, has been determined as being an act in relation to the goods, inconsistent with the ownership of the seller. Such an act or acts on the part of the buyer constitute an acceptance.
"* * *

"The defendant's conduct in offering the goods for

sale was not a reasonable exercise of its right to test the quality of the goods. In fact, a sale or an attempt to sell, by the buyer, successful or otherwise, fixes no competent standard for determining whether the original seller had complied with the warranties attending that sale.

"The defendant, having 'accepted' the goods, with knowledge that they were not according to the terms of the agreement, is precluded from rescinding the agreement, under the express provisions of Section 8449, General Code."

The sole question before this court in the appeal on questions of law from the judgment of the court below is whether the acts and conduct of the defendant constituted, as a matter of law, an acceptance of the goods in question. If they did, the judgment must be affirmed. If they did not, the court erred and the judgment must be reversed.

In the trial, it was established that the plaintiff is a manufacturer of rubber and plastic articles. The defendant is a dealer in scrap rubber and plastics. Vinyl chloride is a chemical compound of carbon, hydrogen and chlorine. Polyvinyl chloride is a polymerization of vinyl chloride, which, when plasticized with other materials, forms a plastic which may be rigid or nonrigid. Polyvinyl chloride, rigid reground, is a plastic scrap. This is the material which formed the subject matter of the contract of sale.

There is conflicting evidence as to whether the material actually shipped corresponded to the specifications of the order. The jury, while rendering a verdict for the defendant on the plaintiff's petition, also answered the following interrogatory, as shown at the end thereof:

"Do you find by the greater weight of the evidence that all the goods shipped by the plaintiff, Rubber

Corporation of America, to the defendant, Tanney-Costello, Inc., corresponded with the description in the contract and the samples submitted?

Answer: "No."

It appears in the evidence that on the day following the unloading of the shipment by the defendant, the said defendant transmitted the following letter to the plaintiff:

"February 26, 1947.

"* * *

"We have just received the shipment of rigid reground polyvinyl chloride, and find that there is some material contained therein which is not like the sample we purchased.

"To make ourselves perfectly understood here, we send you herewith a part of the original sample on which we made the purchase which is designated by the letter 'A.'

"The material contained in the enclosed sample designated by the letter 'B' represents a substantial quantity which we have received. It appears likely there is about 37 drums of this material which we temporarily declare to be objectionable.

"However, we will take this up with our customer; and if it is acceptable to them, we, of course, will be pleased to accept it from you as a good delivery. We just want to get on record immediately that there might be some objection.

"We will let you know promptly after we have had our customer's reaction."

Subsquent to the sending of this letter, the defendant submitted samples of the material to several of its customers, presumably for the purpose of determining whether the material was of such quality as could be sold in the trade to such customers. Finally, on March 7, 1947 (several days after the letter of

February 26, 1947), the following telegram was sent by the defendant to the plaintiff:

"Two of our customers' reports show. the material is contaminated and not usable. Therefore we must reject this portion of the shipment and ask that you give us shipping instructions."

Now, as stated before, is it proper to say that this conduct of the defendant constituted, as a matter of law, an acceptance of the goods?

Resorting to the statute, we find the following in Section 8428, General Code:

"Acceptance, when complete. The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, *or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller,* or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." (Italics ours.)

The words "inconsistent acts" under the statute do not present an inflexible rule. Whether an act or acts of a purchaser are inconsistent with the ownership of the goods in the seller, depends upon the circumstances shown to exist. When salient facts are not in controversy but different inferences may be drawn from them by the exercise of sound judgment, there is usually presented a case for the jury.

From the evidence in the case under consideration, there are many reasonable inferences which could be drawn from the facts. Consideration should be given to the nature of the respective litigants' businesses, the course of dealing between the parties, and the nature of the goods sold, as well as to the language employed by them in the course of their dealings. The fact that the buyer was a dealer in scrap whose business was to sell to others rather than a processor of

articles made out of plastics, could be considered in determining the fact of whether its conduct was inconsistent with ownership in the seller.

It is impossible to set forth the many different ways in which acts of acceptance indicating ownership in the buyer may be exercised by the said buyer. Ordinarily, if the goods are used in a manner which is proper only on the assumption of the buyer's assent to be the owner, such use would be, under the statute, a use "inconsistent with the ownership of the seller."

In this case, it is the conclusion of the members of this court that there is presented a question of fact for a jury to determine as to whether, under all the circumstances, including the correspondence between the parties, the type of business in which each party was engaged and the relationship between them, and the submitting of samples of the goods for the purpose of inspection and perhaps inducing a sale, the acts and conduct of defendant were inconsistent with the plaintiff's ownership, constituting an acceptance thereof by defendant under the provisions of the statute; and, that it was error for the court to decide the question as a matter of law.

The judgment will be reversed and the cause remanded for a new trial, for the purpose of having this question of "acceptance," as well as the other questions in the litigation, passed upon by a jury under proper instructions.

*Judgment reversed and cause remanded.*

STEVENS, P. J., and HUNSICKER, J., concur.