388 P.2d 1002

**Frank MOHR, Plaintiff-Appellant,**

**v.**

**Preston SHULTZ, Defendant-Respondent.**

**No. 9203.**

Supreme Court of Idaho.

Jan. 29, 1964.

Frank E. Chalfant, Jr., Boise, for appellant.

Hall & Rowett, Mountain Home, for respondent.

SMITH, Justice.

This is an appeal from a judgment of dismissal of an action brought by appellant (plaintiff) to recover the reasonable value of certain baking equipment sold and delivered to respondent (defendant). Appellant's assignments of error necessitate a review of the evidence in order to determine if the trial court erred.

In October 1959, appellant closed his bakery business in Kimberly, Idaho. In a letter dated March 15, 1960, respondent, then in the process of starting a bakery business at his dairy in Bruneau, Idaho, requested price quotations on appellant's electric bakery oven and other baking equipment. In May 1960, respondent traveled to appellant's place of business in Kimberly where he purchased and accepted delivery of the oven and other baking equipment and merchandise, and shortly thereafter respondent paid $100 to appellant to apply on purchase price. While the parties agreed at the time that the price for the oven was

$450.00 there is conflicting evidence concerning the prices for the other items of baking equipment, and as to whether respondent accepted several of the items free of charge as gifts.

In the fall of 1960, several months after the sale and delivery to respondent, a dispute arose between the parties concerning the prices to be paid for certain items of the baking equipment. Appellant demanded $2,499.15; respondent insisted that the price agreed upon was $1,328.00 and objected to the inclusion of several items in appellant's billing which, respondent claimed, he did not purchase. The parties not having arrived at an agreement as to price, respondent advised appellant in a letter, dated October 15, 1960, that he was returning a truck load of the baking equipment and that he would return the rest "as soon as we have the time." In the same letter however, respondent enclosed a second partial payment of $100.00 toward purchase of the equipment. Appellant refused redelivery of those items of equipment, and they were unloaded in a vacant lot adjacent to appellant's place of business.

Appellant then secured the services of an attorney in Twin Falls, Idaho, to assist in obtaining payment by respondent for the baking equipment. This resulted in an exchange of letters with respondent's attorney, pursuant to which, in a letter dated November 25, 1960, appellant's attorney suggested that respondent "return the equipment, and that the deal be cancelled between the parties." Respondent's attorney under date of January 3, 1961, replied to that offer stating that respondent "would prefer to cancel the agreement between the parties. He will therefore return the equipment." On January 11, 1961, appellant's attorney acknowledged the aforesaid reply, "advising me that Mr. Shultz has decided to return the equipment to my client, Mr. Mohr"; then requested that the equipment be returned to the same place and in the same condition as when first delivered; and further requested the date of delivery since "Mr. Mohr would like to be * * * on hand to accept the same and examine it."

On January 27, 1961, appellant's attorney again wrote respondent's attorney about the agreement supposedly arrived at by the previous correspondence, in which letter the following statement appears:

"Some time ago, you advised me that Mr. Shultz had decided to return the equipment to Mr. Mohr, which, up to this date, he has failed and neglected to do. We have been advised that he is using all of this equipment, and it now appears to Mr. Mohr that Mr. Shultz has no intentions of returning said equipment, and Mr. Mohr feels that he has had more than a reasonable length of time to live up to this, his second promise, so Mr. Mohr is no longer willing to accept redelivery of said equipment, but demands payment therefor."

In reply, respondent's attorney, in a letter dated January 31, 1961, stated:

"On January 3, 1961, I advised you that we had accepted your offer to cancel the agreement. I assume that you know that the Little Valley Dairy operates a bakery and has been operating it for some time. A part of the equipment, namely the oven, could not be removed at once because it was built into the building and it is necessary for the Little Valley Dairy to secure a replacement for it. I am sure that you did not expect them to discontinue their business immediately. They have gone ahead, based upon our prior agreement, and are securing the property for replacement and we will return Mr. Mohr's property to him just as soon as possible."

Then, under date of February 6, 1961, appellant's attorney reaffirmed the position taken in his letter of January 27th, stating:

"Mr. Mohr is not willing to accept the equipment back at this time, and will not accept it back unless and until a satisfactory agreement is worked out in writing concerning the condition that the equipment must be in when it is returned, where it is to be placed, and the amount of rent that Mr. Mohr is to receive for its use during these many long months."

Later, during March 1961, respondent returned additional items of the equipment, and during July 1961, he returned the remaining items, including the bakery oven. Appellant refused to accept the redelivered property, and it was stored in a commercial warehouse.

After respondent had returned all of the baking equipment, appellant commenced this action on August 17, 1961, seeking judgment for $2,499.15, the sum originally demanded, as the reasonable value of the baking equipment sold and delivered. The action was tried to the court sitting without a jury. At the conclusion of appellant's case in chief the court granted respondent's motion for dismissal, followed by entry of the judgment dismissing the action, and this appeal resulted.

Appellant assigns as error the trial court's conclusion of law reading:

"The offer of the plaintiff to cancel the agreement and accept the return of the property and its acceptance by the defendant constituted a rescission of the sale agreement, if there was a sales agreement, and any agreement for the sale and purchase of said property between the parties was thereby nullified."

Appellant attacks the expression of doubt as to whether a valid sale took place, and if so, whether the parties subsequently rescinded it by mutual agreement.

■ The record shows that the parties entered into an oral contract for the sale and purchase of the baking equipment, although there was uncertainty as to prices to be paid other than for the oven. I.C. § 64–308 (a part of the Uniform Sales Law), provides:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

The evidence shows that in October 1960, some four months after respondent's initial acceptance of the equipment under an implied agreement to pay its reasonable value, except for the oven, respondent redelivered a portion of the equipment. In his letter dated October 15, 1960, respondent told appellant that "we will return the rest as soon as we have the time." In remitting an additional $100 to appellant in that letter respondent stated, "meanwhile find a check inclosed to be applied as agreed on the equipment that we first purchased from you." Respondent's letter shows, (1) that the return of the equipment would be at his, respondent's convenience, and (2) that he regarded a portion of the equipment, i. e., that "first purchased," to have been pur-

chased by him subject to payment of a purchase price. Respondent's conduct in those two instances was "inconsistent with the ownership of the seller." I.C. § 64–308.

Time then elapsed from October 15, 1960 to January 27, 1961, and respondent had not returned the balance of the equipment; whereupon appellant's attorney by his letter of January 27, 1961, demanded payment because of respondent's failure to return the equipment within a reasonable length of time. The reply letter of respondent's counsel of January 31, 1961, indicates respondent's continued use of the equipment in his business, and that he would return it "as soon as possible," i. e., once more at his convenience. That letter again showed conduct on respondent's part inconsistent with ownership by appellant as seller. Time continued to elapse until March 1961, when respondent returned additional equipment, and during July, when he returned the balance of the equipment including the oven. Appellant did not accept redelivery of any part of the equipment.

■ While appellant retained the $200 paid by respondent on account of the purchase price, an accounting is implicit in the terms of the letter of February 6, 1961, written by appellant's attorney, which makes reference to the condition of the equipment upon its return, and the amount of rent "for its use during these many long months." Although the letter constituted an offer on

appellant's part to take back the equipment on a basis to be agreed upon in writing, including an accounting, the parties did not arrive at any agreement; nor does. the record indicate any overture by respondent in response to the letter by appellant's attorney of February 6th.

Respondent is deemed to have accepted the goods, and to have become obligated to pay their reasonable value in the absence of a definite price agreement, when he has received and appropriated them to his own use. Reynolds v. Blackwell Lumber Co., 61 Idaho 529, 104 P.2d 19 (1940); Simpson, Contracts § 14 (1954).

In the light of our disposition of this appeal by the granting of a new trial, I.C. § 1–205 admonishes us to determine questions of law which may be necessary for the final determination of the case.

It may become necessary, upon a new trial, for the trial court to find upon the issue whether respondent kept the goods for an unreasonable length of time after allegedly rejecting them, or whether any such delay was excusable.

In Vold, Law of Sales, (1959), § 35, it is stated:

> "Acceptance of goods may be shown by words or conduct. It must show the buyer's assent to become owner of identified goods offered by the seller. Keeping delivered goods more than a reasonable time without notice of re-

jection can itself be a tacit showing of acceptance."

See also I.C. § 64–308; Cram v. Wes Durston, Inc., 68 Nev. 503, 237 P.2d 209 (1951).

■ Garetto v. Almaden Vineyards, 118 Cal.App.2d 99, 257 P.2d 477 (1953), announced the rule regarding excusable delay, concisely stated in the syllabus, as follows:

> "Where delay in notifying seller that buyer refuses to accept goods is caused by negotiation with seller in attempt to reach amicable settlement, delay is excused."

and the further general rule relating to the reasonable time factor, as follows:

> "The general rule is that unless the delay is so palpably unreasonable as to constitute an acceptance as a matter of law the effect of the delay presents a question for the trier of fact. Warner-Godfrey Co. v. Sheinman, 273 Pa. 105, 116 A. 671; Laganas Shoe Mfg. Co. v. Sharood, 173 Minn. 535, 217 N.W. 941; Hayes v. Kluge, 86 N.J.L. 657, 92 A. 358; Rubber Corporation of America v. Tanney-Costello, 86 Ohio App. 438, 93 N.E.2d 38; Massari v. Accurate Bushing Co., 8 N.J. 299, 85 A.2d 260." Supra, 257 P.2d page 479.

The crucial question is whether appellant relinquished his right to payment for the

goods sold and delivered, when he subsequently offered to accept their return and cancel the agreement. The trial court held that the correspondence between the parties constituted, in effect, a rescission of the sales agreement, and that any contract for the sale and purchase of appellant's property was nullified. We entertain the view, however, that the trial court erred in so holding, in that the trial record and applicable law support the conclusion that a mutual rescission did not take place.

Corbin on Contracts, Vol. 5, § 1236 (1951), contains a discussion relating to discharge by rescission, as follows:

"* * * rescission means a mutual agreement by the parties to an existing contract to discharge and terminate their duties under it. Just as in the case of the formation of a contract, so also in the case of its rescission there are expressions of assent by both parties—usually in the form of an offer by one and an acceptance by the other. The legal effect of a rescission as thus defined is the discharge of all rights and duties on the part of both parties with respect to the contract that has been rescinded.

\* \* \* \* \* \*

"If the existing agreement that is the subject of rescission is still a bilateral contract, each of the parties has one or more rights under the contract to be given up, as well as one or more duties under it from which to be discharged. In such a case a mutual assent to a rescission is at once operative to discharge both parties. * * *"

See also 6 Williston, Contracts, §§ 1829, 1831 (rev. ed. Williston & Thompson 1938) ; Simpson, Contracts § 158 (1954).

The foregoing statements by Corbin are summarized in Restatement of Contracts (1933), which adds the doctrine of promissory estoppel; § 406 provides that " * * * an agreement by the parties to a contract to rescind their contractual duties, or duties to make compensation, discharges such duties if the agreement is under seal, or is based on sufficient consideration, or induces such a change of position as is stated in § 90; * * *."

This Court has consistently held that to rescind a contract which has been executed in whole or in part, it is essential that the parties be placed in status quo. Rino v. Statewide Plumbing & Heating Co., 74 Idaho 374, 262 P.2d 1003 (1953) ; Weeter v. Reynolds, 48 Idaho 611, 284 P. 257 (1930) ; Weber v. Pend D'Oreille Mining & Reduction Co., 35 Idaho 1, 203 P. 891 (1921) ; Breshears v. Callender, 23 Idaho 348, 131 P. 15 (1913). Restoring the parties to the status quo is not accomplished by a mere promise to do so at a future time, unless the parties expressly so provide, or unless there is a substantial change of posi-

tion by the promisee in reliance on the promisor's promise.

▇▇ Here, appellant fulfilled his duties under the original contract by delivering the baking equipment to respondent; the contract became executed on his part; he then became entitled to the performance of respondent's promise to pay the agreed purchase price for a portion of the goods sold (the oven) and the reasonable value of the remainder. At the time of the attempted rescission what originally was a bilateral contract in effect had become a unilateral contract since there existed only the duties thereunder required to be performed by respondent, except as to a possible accounting. In such a situation, the agreement to rescind must be supported by good consideration in order to become an enforceable contract. There is no language in the referred to correspondence to indicate that appellant regarded the mere promise to return the goods as sufficient to cancel the agreement between the parties. In fact, the converse is made clear in his letters of January 11th and 27th, 1961, and February 6, 1962. Neither did appellant attempt to place respondent in status quo, since there is no showing that he returned the partial payments of $200 which respondent had previously made.

The evidence is also insufficient to support the view that respondent substantially changed his position to his detriment in reliance upon appellant's offer to cancel the agreement. Respondent's attorney states, in his letter of January 31, 1961, that respondent, "based upon our prior agreement", was in the process of "securing the property for replacement and we will return Mr. Mohr's property to him just as soon as possible." The language, "securing the property for replacement," does not, without more, indicate change in position to respondent's detriment.

▇▇ Allowing promissory estoppel as a substitute for consideration is permitted in those situations where injustice would otherwise result. The reason for the doctrine also defines its limits. In order to allege the defense of promissory estoppel, it must be shown: (1) the detriment suffered in reliance was substantial in an economic sense; (2) the substantial loss to the promisee acting in reliance was or should have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made. Simpson, Contracts § 42 (1954).

Respondent alleged in his amended answer that relying on an alleged agreement of rescission he located another oven at Coeur d'Alene, Idaho, and had the same transported to his place of business in Bruneau. But in his pre-trial memorandum he alleged that he "located another oven". In the light of the trial court's disposition

**541**

of the action by dismissal, on the theory that the correspondence showed a mutual rescission by the parties, no evidence was introduced in support of respondent's alleged theory of rescission based upon his alleged change in position.

■ The evidence thus is insufficient to show that respondent consummated the purchase of an oven in Coeur d'Alene; or to show that he tore down a portion of the wall of his building for oven installation purposes, or performed any other act to his detriment in justifiable reliance on the exchange of the correspondence during January and early February, 1961. Thereafter respondent did not return a shipment of the more easily transportable goods until March 1961; nor did he remove a portion of the wall of his building until sometime in July 1961, at which time he removed the oven for redelivery to appellant. Respondent's mere negotiation to purchase another oven, which is the most that can be gleaned from the evidence, did not constitute a substantial change in position. Restatement of Contracts, § 90.

■ A rescission is a contract and must therefore meet the formal requisites necessary for the making of a valid contract. The correspondence of the parties does not manifest a meeting of the minds, particularly concerning respondent's continued use of the equipment, or time of its redelivery.

In Brothers v. Arave, 67 Idaho 171, 175, 174 P.2d 202, 205 (1946), quoting with approval from Phelps v. Good, 15 Idaho 76, 84–85, 96 P. 216, 218, it is stated:

" 'In order to constitute a contract, there must be a distinct understanding common to both parties. The minds of the parties must meet as to all of its terms, and, if any portion of the proposed terms is unsettled and unprovided for, there is no contract. * * * An acceptance of an offer, to be effectual, must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer.' "

See also Hoskins v. Michener, 33 Idaho 681, 197 P. 724 (1921).

Appellant further contends that the evidence supports the conclusion that the parties entered into an executory accord rather than a rescission agreement. It is not necessary to resolve that contention since respondent did not plead accord and satisfaction, as an affirmative defense, nor is there any showing that his failure to do so was waived by appellant. Werry v. Goodman, 78 Idaho 298, 301 P.2d 1111 (1956); Stone v. Webster, 65 Idaho 392, 144 P.2d 466 (1943); 6 Corbin, Contracts § 1280 (1951). An affirmative defense not pleaded in the trial court cannot be raised for the first time on appeal. I.R.C.P. § 8(c) (1958).

542

■ Appellant also assigns as error the refusal of the trial court to admit in evidence a catalogue published monthly by a large bakery equipment supply company showing current market prices for new and used baking equipment. Error here committed is harmless in view of appellant's additional uncontradicted testimony concerning the reasonableness of his prices for the equipment delivered to respondent. However we resolve the principle of law involved under the admonition of I.C. § 1–205, inasmuch as it may be necessary to the determination of the case upon a new trial.

■ Whether standard price lists and market reports may properly be admitted in evidence as part of the "learned treatise" exception to the hearsay rule has been and continues to be a source of discussion for legal scholars. 6 Wigmore, On Evidence § 1704 (3d ed. 1940); McCormick, On Evidence § 296 (1954). This Court in 1905 had occasion to determine such issue in American Bonding Co. v. Regents of University, 11 Idaho 163, 81 P. 604; the Court first quoted from the early New York case of Whelan v. Lynch, 60 N.Y. 469 (1875), which directed attention to objections to the admission of certain evidence:

" ' * * * the court was also in error * * * in admitting the shipping and price current list as evidence of the value of the wool, without some

proof showing how or in what manner it was made up, where the information it contained was obtained, or whether the quotations of prices made were derived from actual sales, or otherwise. It is not plain how a newspaper containing the price current of merchandise, of itself, and aside from any explanation as to the authority from which it was obtained, can be made legitimate evidence of the facts stated. * * * ' "

The Court then distinguished the facts in the New York case from those in the case then under consideration:

"There is a very wide distinction between the facts in this case [the New York case] and the one at bar. There was no evidence of any character tending to show the source from which the publication in question obtained its information, whilst in the case under consideration it was shown a catalogue of the wholesale dealer was in possession of the witness, who explained fully to the court and jury how he was enabled from that catalogue to figure on contract work, and that, as prices changed from lower to higher or *vice versa,* he was promptly notified of such changes. It might not be amiss to say here that it is a well-known fact to the business world that practically all goods sold to the retail market is from the system of

catalogues. The traveling salesman carries his catalogue prepared by the wholesale dealers, and makes his sales to the retail dealer from it. * * *. Supra 11 Idaho at 189, 81 P. at 613.

* * * * * *

"* * * While courts, in the administration of the law of evidence, should be careful not to open the door to falsehood, they should be equally careful not to shut out truth. They should not encumber the law with rules which will involve labor and expense to the parties, and delay the progress of the remedy—itself a serious evil—without giving any additional safeguard to the interests of justice. We think the price current is not liable to the objection that it was hearsay. It was prepared and used by the party who furnished it in the ordinary course of his business. * * * It was clearly relevant." Supra 11 Idaho at 193, 81 P. at 614.

This same reasoning was reiterated by this Court 24 years later in State v. Jensen, 47 Idaho 785, 280 P. 1039 (1929); therein the Court in ruling that the trial court did not err in admitting in evidence bond listings from an accredited financial publication, stated:

"The witness Childs, for the state, a dealer in bonds and investments, was shown to have been engaged in, and familiar with, that business for a period covering a number of years, and during the course of his examination excerpts from issues of the Commercial and Financial Chronicle * * * were read to the jury. The witness testified that 'The Chronicle' was a reliable and leading organ in his business and its report recognized as authentic. We think there is no question of the propriety of allowing such matter to go to the jury, under the authorities.

"'Accredited price current lists and market reports, including those published in trade journals or newspapers which are accepted as trustworthy, are admissible in evidence * * *' [Citations, including 3 Wigmore on Evidence, sec. 1704]." Supra 47 Idaho at 792, 280 P. at 1041.

Appellant identified the catalogue prior to offering it in evidence; his uncontradicted testimony showed it to be the monthly publication of Rust Sales Company of Denver, Colorado, a large bakery equipment supplier in the Intermountain West. Appellant further testified that he had purchased baking equipment from Rust Company salesmen who carried those catalogues, which were in general circulation to bakers and baking houses throughout the country; that appellant made use of the catalogues which, in addition to the current market prices, contained descriptions of the items of new

and used baking equipment offered for sale. Such testimony established a proper foundation for admitting the catalogue in evidence, insofar as it may bear upon the kind and reasonable value of the baking equipment sold by appellant to respondent.

The judgment of dismissal of the trial court is reversed and the cause remanded for a new trial. Costs to appellant.

KNUDSON, C. J., and McQUADE, McFADDEN, and TAYLOR, JJ., concur.