991 P.2d 857

**RULE SALES AND SERVICE, INC., Plaintiff–Appellant,**

v.

**U.S. BANK NATIONAL ASSOCIATION, successor in interest to West One Bank, Defendant–Respondent.**

Nos. 24785, 24973.

Court of Appeals of Idaho.

Nov. 2, 1999.

Review Denied Jan. 12, 2000.

Richard L. Harris, Caldwell, for appellant.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent. J. Kevin West argued.

LANSING, Judge.

This appeal raises issues as to whether enforcement of an alleged oral agreement to modify a loan contract is rendered unenforceable by the statute of frauds or by a contract clause prohibiting oral modifications. We also must address whether the alleged oral modification, which is unsupported by consideration, may nonetheless be enforceable by application of the doctrine of promissory estoppel.

## I.

## BACKGROUND

Rule Sales and Service, Inc. (Rule) is a corporation engaged in the fabrication and installation of underground steel tanks, primarily petroleum tanks for gasoline distributors. Rule also sells, installs and services pumps and other equipment related to the tanks. On September 6, 1995, Rule entered into a revolving loan agreement with West One Bank, which subsequently became the U.S. Bank National Association (the Bank). The loan proceeds in the amount of $150,000 were to be used for Rule's operating expenses. To secure the loan the Bank took a security interest in Rule's accounts receivable, inventory, equipment and vehicles. The transaction was embodied in several documents: (a) a commitment letter from the Bank indicating its approval of the loan to Rule in the amount of $150,000, subject to specified terms and conditions, which was signed by both the Bank and Rule; (b) a $150,000 promissory note executed by Rule; (c) a personal guaranty from Steven Rule, the company's president; and (d) two commercial security agreements that granted the Bank a security interest in various assets of Rule and of guarantor Steven Rule, including all accounts, contract rights and general intangibles of the business. The security agreement covering Rule's accounts receivable specified that, in the event of Rule's default in payment, "Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender."

Rule was unable to pay off the loan when it matured on June 15, 1996. According to Jon Frye, the accountant and financial agent for Rule, the corporation's inability to negotiate an extension of the loan or find alternative financing was the result of a pending divorce between Steven Rule and his wife, which was hampering the accountant's ability to gather all of the records necessary to demonstrate the company's financial stability to the Bank. Frye felt that the amount of work in progress by Rule showed that the company's business prospects were very good.

On June 21, 1996, Frye met with Larry Thompson, the Bank's loan officer, who was the person primarily responsible for monitoring the Rule loan. In his deposition, Frye testified that he received assurances from Thompson that the loan would not be considered in default until it was thirty days past due, and that no action would be taken on the loan during that time. Frye also testified that he sought and received assurances from Thompson that Frye would receive ten days' notice before letters were sent out to Rule's customers demanding that payment be made to the Bank pursuant to its security interest in the accounts receivable. According to Frye, he stressed to Thompson the importance of such notice because the Bank's sending out such collection letters on Rule's commercial accounts would be very damaging to Rule's business. Frye also indicated to Thompson that he, Frye, would personally provide the money for Rule to pay off the loan rather than allow the Bank to demand payment from Rule's customers. On June 26, 1996, however, the Bank sent notification letters to Rule's account customers advising them to include the bank as payee on any account payments to Rule.

Rule ultimately repaid the loan in full. Thereafter, in September 1997, Rule filed this action, alleging that by sending the letters to Rule's customers, the Bank breached its promise not to treat the loan as being in default until it was thirty days past due and its promise to give ten days' notice prior to taking action to collect on the accounts receivable. Rule alleged that the Bank's conduct led Rule's customers to believe that Rule was financially unstable and that this caused damage from loss of business in excess of $700,000.

The Bank moved for summary judgment, asserting that even if the alleged promises were made, they were unenforceable. The district court granted summary judgment to the Bank on alternative bases. It held that the oral agreement asserted by Rule was invalid under the statute of frauds, Idaho Code § 9–505(5), and unenforceable for lack of consideration. The court also determined that the alleged oral agreement violated clauses in the note and security agreements that prohibited oral amendments. On appeal Rule urges that summary judgment should not have been granted on any of these bases.

## II.

## DISCUSSION

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Idaho Rule of Civil Procedure 56(c); *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991); *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When a court assesses a motion for summary judgment, the facts are to be liberally construed in favor of the nonmoving party, and all inferences must be drawn in the nonmovant's favor. *Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 128 Idaho 539, 545, 916 P.2d 1264, 1270 (1996); *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). "All doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 720, 791 P.2d 1285, 1299 (1990). *See also State v. Rubbermaid, Inc.*, 129 Idaho 353, 356, 924 P.2d 615, 618 (1996); *Doe v. Durtschi*, 110 Idaho 466, 470, 716 P.2d 1238, 1242 (1986). On appeal from a grant of summary judgment, we employ the same standard applied by the district court. *Knudsen v. Agee*, 128 Idaho 776, 778, 918 P.2d 1221, 1223 (1996); *Thompson v. Pike*, 125 Idaho 897, 899, 876 P.2d 595, 597 (1994).

### A. Statute of Frauds

The district court held that the oral agreement alleged by Rule was invalid under a provision of the statute of frauds, I.C. § 9–505(5), which states:

9–505. **Certain agreements to be in writing.** — In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . . .

5. A promise or commitment to lend money or to grant or extend credit in an original principal amount of fifty thousand dollars ($50,000) or more, made by a person or entity engaged in the business of lending money or extending credit.

It is uncontested that the original loan commitment from the Bank fell within this statute and was thus required to be evidenced by a writing. The question presented is whether the oral agreement ·allegedly made by Frye and Thompson, which modified the loan terms regarding the Bank's rights on default, was also subject to this statute.

This question is one of statutory interpretation. In construing the statute, the court's objective is to give effect to the legislative intent and the purpose of the statute. *Allen v. Blaine County*, 131 Idaho 138, 141, 953 P.2d 578, 581 (1998); *Davaz v. Priest River Glass Co., Inc.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994). In such an analysis, we construe a statute as a whole, considering all portions of the statute together to determine the intent of the legislature. *Id.* The interpretation of a statute begins with an examination of its literal words. *Local 1494 Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978); *Davis v. Idaho Dept. of Health and Welfare*, 130 Idaho 469, 470, 943 P.2d 59, 60 (Ct.App.1997). Where a statute is plain, clear and unambiguous, the courts must follow that plain meaning and neither add to the statute nor take away by judicial construction. *Higginson v. Westergard*, 100

Idaho 687, 604 P.2d 51 (1979); *Moon v. Investment Bd.*, 97 Idaho 595, 548 P.2d 861 (1976). It is for the legislature, not the judiciary, to evaluate the wisdom or efficacy of the statutory scheme. *In re SRBA Case No. 39576*, 128 Idaho 246, 263, 912 P.2d 614, 631 (1995); *Newlan v. State,* 96 Idaho 711, 716, 535 P.2d 1348, 1353 (1975); *Berry v. Koehler,* 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1962).

 We conclude that § 9–505(5) did not invalidate the alleged oral agreement at issue here. The agreement for modification of the loan had two components: it changed the date on which the Bank could treat the loan as being in default, and it placed a new precondition upon the Bank's right to realize on its security by collecting Rule's accounts receivable. Neither of these components falls within § 9–505(5). The plain language of § 9–505(5) does not mandate that all terms of a loan agreement and associated security arrangements be in writing. It does not require, for example, that the security terms of a loan or the borrower's promise to repay be memorialized by a writing in order to be valid. Rather, it is only the *lender's promise or commitment to lend* that must be in writing for enforceability. The apparent purpose of the statute is to protect banks and other businesses from claims that they made an oral commitment to lend money or to grant credit and breached such commitment by failing to deliver the funds. Once the loan funds have been delivered to the borrower, so there is no longer an executory promise to make a loan, the statute, by its plain language, has no further application.

It follows that, in the present case, neither the alleged oral agreement to postpone the default date of the loan nor the alleged agreement for the Bank to provide notice to Frye before collecting accounts from Rule's customers are subject to the statute of frauds because neither of these agreements constitutes a *promise or commitment to lend money or to grant or extend credit.* The Bank's promise to make a loan to Rule was fully performed when the Bank released the loan funds. The asserted agreement to lengthen

Rule's time for performance under the promissory note and to modify the Bank's collection rights under the security agreements did not alter the Bank's promise to lend money, a promise that had already been fulfilled and was no longer extant or subject to modification.

 The Bank argues, however, that the reference in § 9–505(5) to a promise to "extend" credit means that the statute applies to any agreement to lengthen or "extend" the period for repayment of the loan and thus applies to Rule's allegation that the Bank agreed to a thirty-day extension of the default date. We do not agree. The word "extend" has many meanings, including the one advocated by the Bank, which is "to prolong the time of payment of (as a debt) beyond the time orig. stipulated." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, p. 804 (1976). It also has a meaning, however, that is synonymous with the word "grant." *Id.* For two reasons, we believe that "extend" was used by the legislature with this latter meaning in § 9–505(5). First, forms of the word "extend" are used twice in subsection (5), initially in the phrase "to grant or extend credit" and thereafter in the phrase "in the business of lending money or extending credit." In the latter context, "extending" plainly was used to mean granting or making available, not prolonging the time of payment. With the legislature having used "extending" to mean granting or making available in one context, we think it unlikely they intended the term to have a different meaning when used earlier in the same sentence. Second, the statute's application is limited to promises or commitments for loans or credit "in an original principal amount" of $50,000 or more. This language indicates that the legislature was concerned only with original loan commitments, not promises of an extension of time for payment. If the legislature had intended § 9–505(5) to apply to agreements to lengthen the period for repayment of an existing loan, we are confident that it would have done so in more explicit terms.[1] Accordingly, we hold

1. Compare, for example, the language used in the following statutes of frauds from other juris-

dictions, which clearly encompass a lender's

that the alleged agreement to prolong Rule's time for performance was not rendered unenforceable by § 9–505(5). The district court therefore erred in granting summary judgment on this basis.

## B. Lack of Consideration and Promissory Estoppel

As a further basis for dismissing Rule's action, the district court held that the oral agreement alleged by Rule was unenforceable because it lacked consideration and because Rule had not made a prima facie showing of the elements of promissory estoppel, which could serve as a substitute for consideration. Rule argues that this determination was erroneous because its evidence sufficiently demonstrated promissory estoppel.

▮ Preliminarily, we note our agreement with the district court's conclusion that the alleged oral agreement was not supported by consideration. Consideration for a promise may take the form of an act by the promisee that is bargained for and given in exchange for the promise. *Day v. Mortgage Ins. Corp.*, 91 Idaho 605, 607, 428 P.2d 524, 526 (1967). Consideration may also consist of a detriment to the promisee or a benefit to the promisor. *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 603, 514 P.2d 594, 598 (1973). Here, the Bank did not receive any benefit or any reciprocal promise or action from Rule in exchange for the concessions it allegedly made in the conversation between Thompson and Frye, nor did Rule incur any detriment as an agreed exchange for the Bank's promise. There-

fore, no consideration existed for the Bank's agreement.

▮ Even in the absence of consideration, however, the law recognizes that in some circumstances a promise may become enforceable by reason of the promisee's having justifiably relied upon it. "A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 67–68, 625 P.2d 417, 421–22 (1981) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 90(1) (1973)). *See also Day, supra; Mohr v. Shultz*, 86 Idaho 531, 540, 388 P.2d 1002, 1008 (1964). Promissory estoppel requires the following elements: 1) the detriment suffered in reliance on the promise was substantial in an economic sense; 2) the substantial loss to the promisee acting in reliance was or should have been foreseeable by the promisor; and 3) the promisee must have acted reasonably in justifiable reliance on the promise made. *Mitchell v. Bingham Mem'l Hosp.*, 130 Idaho 420, 425, 942 P.2d 544, 549 (1997); *Smith, supra; Mohr, supra.*

▮ In rejecting Rule's argument that he had raised a genuine factual issue as to the applicability of promissory estoppel, the district court stated: "In order to apply a promissory estoppel theory to these facts, it would be necessary to find that the Lender, for some reason, wanted Rule to default so that it could begin foreclosure. The record would

agreement to lengthen the period for repayment of a loan:

 Colo.Rev.Stat. Ann. § 38–10–124(a) (West 1999), defines credit agreements that are required to be in writing to include:

 (I) a contract, promise, undertaking, offer or commitment to lend, borrow, repay *or forebear repayment of* money, to otherwise extend or receive credit, *or to make any other financial accommodations;*

 (II) *any amendment of,* cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraph[ ](I) . . . (Emphasis added.)

 Ohio Rev.Code Ann. § 1335.02 (Banks–Baldwin 1994 & Supp.1999), defines loan agreements that must be in writing as:

 One or more promises, promissory notes, agreements, undertakings, security agreements, mortgages, or other documents or commitments, or any combination of these documents or commitments, pursuant to which a financial institution loans *or delays*, or agrees to loan *or delay, repayment of money*, goods, or anything of value, or otherwise extends credit *or makes a financial accommodation.* (Emphasis added.)

 N.J. Stat. Ann. § 25:1–5 (West 1997), covers:

 An agreement by a creditor *to forebear from exercising remedies* pursuant to a contract, promise, undertaking or commitment [to loan money or to grant, extend or renew credit]. (Emphasis added.)

not support such a conclusion." We think that the district court's rationale is incorrect. Promissory estoppel does not require a nefarious intent on the part of the promisor to cause harm to the promisee. With respect to the promisor's state of mind, the doctrine requires only that it be foreseeable to the promisor that the promisee would take some action or forbearance in reliance upon the promise and would thereby suffer substantial loss if the promise were to be dishonored.

██ The pertinent reliance here was Rule's alleged forbearance from paying off the loan by acquiring the necessary funds from Frye (who testified that he would have provided this funding) in order to prevent the Bank from making collection demands on Rule's customers. Rule presented evidence that it had lost more than $700,000 in business as a result of the Bank's breach of the alleged oral agreement. According to Rule's evidence, this loss occurred because some of the accounts receivable customers who were contacted by the Bank ceased doing business with Rule based upon an erroneous belief that Rule was in financial trouble. Frye testified that the Bank should have foreseen the loss because he had told Thompson that sending notification letters would "break" Rule. Frye allegedly explained to Thompson that if Rule's customers thought the company was financially unstable they would panic because of the possibility that their own property would become encumbered with liens. These facts, if believed, would support a finding that the elements of promissory estoppel are satisfied. Rule raised genuine factual issues as to whether promissory estoppel applied in this case as a substitute for consideration. Accordingly, we conclude that the district court erred in granting summary judgment on the ground that the alleged agreement was unsupported by consideration.

## C. The No Oral Modification Clause

In granting summary judgment to the Bank, the district court also referred to a provision in the loan documents stating that no alteration of or amendment to the promissory note or security agreements would be effective "unless given in writing and signed by the party sought to be charged or bound by the alteration or amendment." Although the Bank did not rely upon this contractual term in its motion for summary judgment, the district court apparently relied upon it as part of the basis for granting judgment, and we therefore briefly address the question of the enforceability of this clause.

██ It is the general common law rule in this country that an oral modification of a written contract may be enforceable, notwithstanding a clause prohibiting unwritten modifications, at least in circumstances where one party has relied upon the modification.[2] 2 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.6 (2d ed.1998); 6 A. CORBIN, CORBIN ON CONTRACTS § 1295 (1963). *See also, e.g., Autotrol Corp. v. Continental Water Sys. Corp.,* 918 F.2d 689, 692 (7th Cir.1990); *Certified Corp. v. Hawaii Teamsters & Allied Workers,* 597 F.2d 1269, 1271 (9th Cir. 1979); *Tadros v. Kuzmak,* 277 Ill.App.3d 301, 213 Ill.Dec. 905, 660 N.E.2d 162, 170 (1995); *Canizaro v. Mobile Communications Corp.,* 655 So.2d 25, 29 (Miss.1995); *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 430 Pa. 550, 244 A.2d 10, 15 (1968). In conformity with this general rule, the Idaho Supreme Court has held:

> The provision in a private building or construction contract that alterations or extras must be ordered in writing can be avoided by the parties to the contract where their words, acts or conduct amount to a waiver, modification, rescission or abandonment of that provision or where the owner by his acts or conduct is estopped to rely on it.

*Harrington v. McCarthy,* 91 Idaho 307, 310, 420 P.2d 790, 793 (1966). In *Idaho Migrant Council, Inc. v. Northwestern Mut. Life Ins. Co.,* 110 Idaho 804, 718 P.2d 1242 (Ct.App. 1986), this Court likewise held that a "no oral

---

**2.** The common law rule has been legislatively abrogated with respect to contracts for the sale of goods by the Uniform Commercial Code. *See* I.C. § 28–2–209(2). Even under the U.C.C., however, a clause prohibiting unwritten contract modifications may be waived. I.C. § 28–2–209(4).

modification" clause in a lease could be waived. We stated:

> We have found no reason why a clause requiring contract modifications be in writing ... may not be waived. Further, a waiver need not be express but may be implied from conduct. More specifically, an implied waiver occurs where a party's neglect to insist upon enforcing a right results in prejudice to another party.

*Idaho Migrant Council, Inc.*, 110 Idaho at 806, 718 P.2d at 1244 (citations omitted).

■ Rule's evidence of the discussion between Thompson and Frye, and of Rule's reliance thereon, is sufficient to raise a factual issue as to whether the Bank waived or abandoned the clause prohibiting oral modifications of the note and security agreements. It is for a jury to decide whether this testimony is to be believed and what inferences should be drawn therefrom. Therefore, the summary judgment in favor of the Bank cannot be sustained on the basis of the clause in the loan documents prohibiting unwritten alterations or amendments.

Because each of the grounds upon which the court granted summary judgment has been found to be erroneous, the judgment must be vacated and the case remanded for further proceedings.

## D. Attorney Fees

The Bank has filed a cross-appeal challenging the district court's denial of the Bank's request for attorney fees under I.C. § 12–120(3). Although we have vacated the judgment in favor of the Bank, we address this cross-appeal because the issue is capable of arising again on remand.

Idaho Code § 12–120(3) provides that the prevailing party in an action based upon "any commercial transaction" is entitled to recover attorney fees. The statute defines "commercial transaction" as "all transactions except transactions for personal or household purposes." The test for the application of this section is "whether the commercial transac-

tion comprises the gravamen of the lawsuit, that is, whether the commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover." *Spence v. Howell*, 126 Idaho 763, 776, 890 P.2d 714, 717 (1995).

■ In denying the Bank's request for an award of attorney fees, the district court reasoned that, because Rule had paid off the loan before he filed the suit, the commercial transaction was at an end and was not the basis of the lawsuit. We disagree. The fact that a commercial transaction is at an end does not preclude that transaction from being integral to a claim and the basis upon which a plaintiff is attempting to recover. Rule is seeking damages for the Bank's alleged breach of an agreement modifying the terms of a commercial loan. Both the original loan and the alleged oral agreement are commercial transactions within the statutory definition. Accordingly, the party who prevails on remand will be entitled to attorney fees under § 12–120(3).[3]

### III.

### CONCLUSION

The district court's order granting summary judgment to the Bank is vacated and the case is remanded for further proceedings. Costs on appeal, but not attorney fees, are awarded to appellant.

Chief Judge PERRY concurs.

Judge SCHWARTZMAN concurs in the result.

---

**3.** In light of this determination, we need not address whether the Bank would also be entitled to attorney fees, if it prevails, pursuant to clauses in the security agreements requiring Rule to pay the Bank's reasonable attorney fees "incurred in connection with the enforcement of this Agreement."